of section 2561 of the Code of Civil Procedure, and under that authority the surrogate should not have made an allowance to the special guardian in excess of the amount permitted by that section. No exception was necessary in regard to that portion of the decree as it first appears therein.

The proceedings should be remitted to the Surrogate's Court for further action in respect to the allowance to the special guardian, without costs of this appeal to either party. All concur.

---

(79 App. Div. 527.)

TERRY et al. v. ST. STEPHEN'S PROTESTANT EPISCOPAL CHURCH.

(Supreme Court, Appellate Division, Fourth Department. January 27, 1903.)

1. WILL—CONSTRUCTION—LIFE ESTATE—POWER OF DISPOSITION.

A testator gave the net annual income of a fund to his wife during life, with remainder to various legatees. The residue of his estate he gave to his wife for life, "with the right to use and dispose of so much of the principal thereof during her lifetime as she should see fit," leaving all of said residuary that should remain at her death to certain legatees. *Held*, that her power of disposition was limited to what was in her judgment reasonably necessary for her use during her life, and that she had no power to assign such residuary under an agreement that the assignee should pay her the income thereof during her life, and on her death transfer the principal to defendant.

2. SAME—STATUTE ON POWERS—TESTAMENTARY GIFT.

Testator gave his residuary estate to his wife for life, with power to use and dispose of so much of the principal thereof during her life as she should see fit; remainder to various legatees. She assigned the property under an agreement that the assignee should pay her the income thereof during her life, and on her death transfer it to defendant. *Held*, in an action to set it aside, that the transfer to defendant, being in substance a gift, defendant was not a purchaser within the meaning of the statute on powers (1 Rev. St. [1st Ed.] p. 732, § 81; 4 Rev. St. [8th Ed.] p. 2446 § 82), providing that, where an absolute power of disposition shall be given to the owner of a particular estate, for life or years, such estate shall be changed into a fee absolute in respect to the right of creditors and purchasers.

Appeal from Special Term, Oneida County.

Action by Emily B. Terry and another against the St. Stephen's Protestant Episcopal Church to set aside a transfer to defendant of certain securities or stocks which were a portion of the estate of Morgan Butler, deceased. Judgment for plaintiffs, and defendant appeals. Affirmed.

The following is the opinion of MERWIN, J., delivered at Special Term:

The controversy in this case involves the construction of the residuary clause in the will of Morgan Butler, who died on August 3, 1892, leaving him surviving his widow, Marianne H. Butler, but no descendants. His only heirs and next of kin were two sisters and two nieces. He left real estate to the value of $18,000, and personal property, consisting of investment securities, of the value of about $65,000.

The will is dated May 28, 1891. The testator, after providing for debts and expenses, gave to his executors the sum of $40,000 in trust, to invest and pay the net annual income to his wife during her life, and, at her death, he gave the fund, in specified amounts, to twelve different legatees. Of these, seven were benevolent or religious institutions, receiving in the aggregate the sum of $24,000. The other five were individuals, two of them

being his two nieces, and they receiving $5,000 each. Then came the residuary clause:

"All the rest, residue and remainder of my property and estate, real and personal, I give, bequeath and devise to my said wife Marianne Butler for life, with the right to use and dispose of so much of the principal of said residuary estate during her lifetime as she shall see fit. Upon the death of my said wife, I give, bequeath and devise all that shall then remain of my said residuary," to his three sisters, naming them, and the two nieces. He appointed his wife and two others executors, with full power to sell real estate. One of the sisters died before the testator.

On the 5th of May, 1894, there was a judicial settlement of the accounts of the executors, and, in pursuance of the decree then entered, the executors delivered into the custody of said Marianne H. Butler the securities in controversy here, being shares of stock in three corporations, and being a portion of the residuary estate, to be used and enjoyed by her as directed in the will. These securities were in his lifetime the property of Mr. Butler, and were represented by certificates of stock issued to him by the respective corporations. These certificates were surrendered by the executors to the corporations, and new certificates issued by them to and in the name of Mrs. Butler.

On the 31st of May, 1897, Mrs. Butler assigned this stock to one Dewhurst, who was then in her employ, taking from him an agreement that at her death he would assign the same to the defendant, to be received by it for the purpose of the erection of a church. This transfer to Dewhurst was not for his individual benefit. During the lifetime of Mrs. Butler he received the dividends and paid them over to her. It may be inferred that these were so paid in pursuance of an understanding to that effect between Dewhurst and Mrs. Butler at the time of the transfer to him. After her death, which occurred on September 8, 1901, he transferred the stock to the defendant, in accordance with his agreement, and it now holds the same. The defendant did not pay any valuable consideration for the transfer. This stock is of the value of about $14,000; and constituted substantially the entire residuary personal estate. Mrs. Butler received during her life the income of the trust fund, and also the rents and profits of the real estate, which consisted of the homestead and a farm.

The transfer to defendant was in substance a gift from Mrs. Butler, taking effect at her death. Under the will she had no power to dispose of the property by will. The gift was testamentary in its character. Could she, by gift not taking effect till after her death, accomplish what by will directly she could not do?

The primary devise or bequest to the widow was only of a life estate. In this respect the case is different from some of the cases cited. In the Campbell Case, 91 N. Y. 464, the primary devise was, or was deemed to be, absolute, and the question was whether it was limited by subsequent expressions. It was held not. So in the Leggett Case, 132 N. Y. 7, 29 N. E. 950, the primary devise to the widow was absolute, but there was a provision that, on the decease of the widow, "the remainder thereof, if any," should go to other parties. It was held (page 12, 132 N. Y., and page 950, 29 N. E.) that the widow took only a life estate, with a power of sale, to be exercised during her life for her own benefit. The Baumgras Case, 5 Misc. Rep. 8, 24 N. Y. Supp. 767, was an action of partition, and the question was whether the plaintiff had only a contingent remainder. That does not reach the question here.

In Terry v. Wiggins, 47 N. Y. 512, there was a residuary devise to the wife "for her own personal and independent use and maintenance, with full power to sell or otherwise dispose of the same, in part or in the whole, if she should require it or deem it expedient so to do." It was said (page 516) "the power could only be exercised under the will in case the wife should require it or should deem it expedient; that is, with a view to her 'personal use and maintenance'—the purposes for which it was given."

In Matter of Cager, 111 N. Y. 343, 18 N. E. 866, there was a gift to the wife of all the estate, real and personal, "to be used and enjoyed, and at her disposal, during the term of her natural life." Any that might remain at

her decease was given to other parties. It was held that the widow had power to dispose of the corpus of the estate, but that this power was not intended to be absolute and unconditional, but was limited, by the language devising the property, for her use and enjoyment during life, and did not give her the power of disposing of it by will.

In Wells v. Seeley, 47 Hun, 109, there was a residuary devise to the wife, "to be held and used by her as she shall see fit and proper, during the full term of her life; and at her death, if any part of my said estate shall remain unexpended," then over to others. It·was held to be the intention to give to the wife the use of the property during her life, with the power to use such portion of the principal as should, in her opinion, be necessary for her support, and to carry out the provisions of the will.

·In Greyston v. Clark, 41 Hun, 125, there was primarily an absolute gift to the wife, and for this reason it was held (page 132) that the widow, during her life could, dispose of the property, although it was not for her support and maintenance.

In Thomas v. Wolford, 49 Hun, 145, 1 N. Y. Supp. 610, a bequest for life, with remainder over of what might be left, was held to give the widow the power, during her life, to consume or dispose of the corpus of the estate as might become expedient or necessary to secure for her its beneficial enjoyment.

The gift in the present case to the widow for life gave to her the beneficial enjoyment of the property during her life, and in connection with this she was given the right "to use and dispose of" so much of the principal during her lifetime as she should see fit.

The testator, in giving to his wife the income of the trust fund and the residuary estate for life, gave to her the use during her life of all his property. She was not given any claim upon the principal of the trust fund. That was given over, largely, to benevolent objects, provision being also made for the two nieces. The widow was given the right to resort to the principal of the residuary estate. The provisions for the widow were undoubtedly intended for her personal benefit during her life. I fail to find in the will any evidence of any intention on the part of the testator to constitute the widow the almoner of his bounty, or give her power to create a trust for that purpose. His limitation of her power to her lifetime is indicative of a contrary intention. He designed to fully provide for his wife, but he expected there would be a remainder at her death. He used the words "all that shall then remain." Of the five remaindermen, three of them, his sisters, had not been previously remembered in the will.

The logic of the Cager Case seems to me to be quite applicable here. There the gift was "to be used and enjoyed and at her disposal" during life, and still the power of disposition was said to be limited to the purpose of her use and enjoyment. A power to dispose of "as one shall see fit" is no stronger than a power of disposal generally. So, in the Wells Case, the expression "as she shall see fit" seems to have been considered as only leaving it to the judgment of the devisee to determine the amount necessary to carry out the provisions of the will. In the Leggett Case, although there was primarily an absolute devise in terms not limited in its object, still it was said that there was only a power of sale to be exercised by the devisee for her own benefit.

I am of the opinion that the power of disposition given to the widow in this case was limited to what was in her judgment reasonably necessary for her use and enjoyment during her life, and that she had no power to make what were in effect testamentary dispositions.

The transfer to defendant, being in substance a gift, it (defendant) is not, I think, a purchaser within the meaning of the statute on powers (1 Rev. St. [1st Ed.] p. 732, pt. 2, c. 1, tit. 2, § 81; 4 Rev. St. [8th Ed.] p. 2446, § 82), even if that statute is deemed to be applicable. Rose v. Hatch, 55 Hun, 461, 8 N. Y. Supp. 720.

The plaintiffs are in a position to attack the transfer. Swartout v. Ranier, 143 N. Y. 499, 38 N. E. 726.

The foregoing considerations lead to the conclusion that the transfers to defendant are not valid, and the plaintiffs are entitled to recover the property.

Argued before ADAMS, P. J. and McLENNON, SPRING, WIL-
LIAMS, HISCOCK, and NASH, JJ.

Frank M. Loomis, for appellant.
C. Lansing Jones, for respondents.

PER CURIAM. Judgment affirmed, with costs, upon foregoing
opinion of MERWIN, J., delivered at Special Term.

---

(80 App. Div. 503.)

### MERRILL v. THOMPSON et al.

(Supreme Court, Appellate Division, Second Department. March 26, 1903.)

1. PLEADING—JOINT DEFENSE—AMENDMENT OF COMPLAINT—JUDGMENTS—DE-
FAULT.

Plaintiff sued T. and six other defendants, charging them as joint tort
feasors. T.'s demurrer to the complaint was overruled, with leave to
answer on payment of costs. The other defendants, appearing separately,
moved to require the complaint to be made more specific, which was
granted, whereupon plaintiff served amended complaints on each of the
defendants except T., who had not answered the original complaint.
*Held*, that plaintiff was not entitled to judgment by default against T.,
since the amended complaint was substituted for the original pleading,
and T. was entitled to a copy thereof before being compelled to answer.

Appeal from Special Term, Kings County.

Action by Damon Merrill against Edward Thompson, impleaded
with others. From an order denying plaintiff's motion for judgment
against defendant Thompson, he appeals. Affirmed.

Argued before GOODRICH, P. J., and WOODWARD,
HIRSCHBERG, and HOOKER, JJ.

Edward P. Lyon, for appellant.
John L. Hill, for respondent.

HOOKER, J. This action was commenced in August, 1901,
against Edward Thompson and six other defendants, charging them
as joint tort feasors. The defendant Thompson demurred to the
complaint, and on January 10, 1902, an interlocutory judgment was
entered against him, overruling the demurrer, and allowing him to
answer over within 20 days upon payment of costs. The defendants
Gerding, Lounsbury, and James appeared separately by different at-
torneys, and defendants Vermeule, Hard, and Gilbert appeared to-
gether by still another firm of attorneys. Late in the summer or
early autumn of 1901, the defendant Gerding made a motion to
compel the plaintiff to make his complaint more definite and certain.
The motion was argued, and late in the year 1901 or early in 1902 an
order was entered directing that the complaint be made more defi-
nite and certain in particular respects, but no copy of the order has
ever been served upon the attorneys for defendant Thompson, and
his attorneys did not learn of the terms of the order until July 25,
1902, and never inspected the order until December 13, 1902. On

¶ 1. See Judgments, vol. 30, Cent. Dig. § 172.