(84 South. 709)

YOCKERS v. HACKMEYER et al.
(1 Div. 119.)

(Supreme Court of Alabama. Dec. 18, 1919. Rehearing Denied Jan. 29, 1920.)

1. WILLS ⬅⟶692, 693(1) — TESTAMENTARY POWER TO CONVEY FOR CERTAIN PURPOSES HELD NOT TO GIVE "ABSOLUTE POWER" OF DISPOSITION.

Where a power of sale, given by will to testator's widow, was to be exercised only in the continuance of the business left by testator, or to support and maintain the widow, the power was not an "absolute one," within Code 1907, §§ 3423–3425, changing, in certain cases, an absolute power of disposition into a fee absolute, so as to authorize the widow to convey land generally.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Absolute Power of Disposition.]

2. WILLS ⬅⟶692, 693(1) — GRANTEE UNDER LIMITED TESTAMENTARY POWER OF DISPOSITION HELD NOT "PURCHASER" WITHIN STATUTE.

Where testator's widow, acting under a testamentary power to dispose of realty for the continuance of testator's business and for her own maintenance, attempted to convey to her son in consideration of love and affection and recognition of services already performed, and it appeared that such grantee had previously been compensated for his service, he was a mere volunteer, and not a purchaser, within Code 1907, §§ 3423–3425, transforming an absolute power of disposition, in certain cases, into a fee absolute, and enacted to preserve remainders against everybody except purchasers, who, on the faith of the power, have parted with value; "purchasers" in such act applying to acquisitions of land obtained by way of bargain or some other valuable consideration, and not to its ordinary legal meaning.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Purchaser.]

3. WILLS ⬅⟶692, 693(5)—LIMITED POWER OF DISPOSITION HELD NOT TO AUTHORIZE DISPOSAL OF PROPERTY BY WILL.

Where a will conferred a power of disposition upon testator's widow, limited to the continuance of testator's business and to the widow's maintenance and support, she was not authorized to convey to a son, in consideration of love and affection and in recognition of services already performed, where the deed was testamentary in character; grantor having no power to dispose of the property by will.

4. WILLS ⬅⟶692, 693(1)—POWER LIMITED TO DISPOSITION FOR CERTAIN PURPOSES HELD NOT ABSOLUTE.

Code 1907, § 3426, providing that every power of disposition is deemed absolute, by means of which the donee of such power is enabled, in his lifetime, to dispose of the entire fee for his own benefit, operates only in cases where the terms of the instrument confer a general and beneficiary power, and does not apply to a power limited to sales for continuance of testator's business, or for the maintenance and support of his widow.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Ejectment by Mary Hackmeyer and Louisa Ebert against John Yockers. Judgment for plaintiffs, and defendant appeals. Affirmed.

Harry T. Smith & Caffey and Joseph N. McAleer, all of Mobile, for appellant. Mrs. Yockers had an absolute right of disposition of the property, irrespective of any consideration as to the continuance of the business. Sections 3423–3425, Code 1907; 191 Ala. 326, 68 South. 157. See, also, sections 3411 and 3426, Code 1907; 127 Ala. 443, 29 South. 846; 202 Ala. 578, 81 South. 81; 182 Ala. 528, 62 South. 673; 173 Ala. 604, 55 South. 500; 30 Ala. 405; 32 Ala. 477; 62 Ala. 212; 79 Ala. 66; 85 Ala. 455, 5 South. 219; 197 Ala. 88, 72 South. 344; 131 Ala. 632, 30 South. 872. The widow took a fee simple title to this property. Authority supra.

Smiths, Young & Leigh, of Mobile, for appellee. The will gives the widow a life estate, with the remainder not consumed to the children equally. 174 Ala. 279, 56 South. 974; 26 Ala. 360; 197 Ala. 88, 72 South. 344; 70 South. 579. The words "dispose of otherwise" mean a disposition ejusdem generis with a sale. 73 Ala. 498; 197 Ill. 144, 64 N. E. 267; 87 Wis. 566, 59 N. W. 137; 23 R. I.

396, 50 Atl. 642; 187 Ala. 174, 65 South. 367; 51 Ohio St. 446, 38 N. E. 61.

SAYRE, J. The will of John Yockers, Sr., who died April 16, 1897, provided as follows:

First. After the payment of my just debts, funeral expenses, expenses of last illness and of administration, I give, devise and bequeath all of my estate, real and personal, unto my beloved wife, Anna Maria Yockers, for the support of herself during life, and for the maintenance, support and education of our children during their minority. Having the fullest confidence in her good judgment, I hereby empower her to employ my estate in the continuance of my business, and to sell, or otherwise dispose of all of my property in such manner and of such terms as she may deem best, without any order of any court first obtained. And further empower her to sell or dispose of otherwise my real property, either for cash or on credit, taking security thereof, according to her good judgment, without any order of any court first obtained. And I further authorize and empower her to consume any part of the corpus of my estate, for the purpose of comfortably supporting and maintaining herself and our children, as herein before provided, and of properly educating the latter. I further empower my said wife to advance to any of our said children their respective shares in the reversionary estate herein created, according to her good judgment, and as she may estimate them, to be deducted from the shares of such children, respectively, at the final distribution of my said estate.

Second. I give, devise and bequeath unto my said children by my said wife, all the remainder of my estate, not consumed in the uses before set forth, by my said wife, and remaining undisposed of and unconsumed at her death, to be divided equally between them share and share alike. Should any of said children be deceased before my wife, leaving issue surviving such children, then such survivors shall take the shares the ancestor would have taken if living, to be divided equally between them, share and share alike, per stirpes.

May 16, 1912, Anna Maria Yockers executed and delivered to appellant, defendant in the trial court, John Yockers, Jr., a deed of the lot, to which we may refer as the lot in controversy, upon the recited consideration of "the love and affection which I bear to my son, John Yockers, and in grateful recognition of the faithful services he has rendered me for many years in the conduct of my business at No. 64 South Royal street in said city [of Mobile], for which he has not been adequately compensated." At the time of this conveyance all the then surviving children of John and Anna Maria Yockers were of full age.

Evidence for the defendant went to show that John Yockers, Sr., for many years had conducted a saddlery business on the property in question, and defendant had been his clerk; that after the death of John Yockers, Sr., defendant had continued to conduct the business for his mother until her death, February 11, 1919, by agreement reserving to himself $12 a week, but with the understanding that at some time his services would be more adequately compensated by a conveyance of the property in question. Evidence, on the other hand, went to show that, from a time prior to the death of his father, defendant with his two motherless children had lived in the family residence, his testimony on that point being as follows:

"During my father's life he paid me $12 a week and my board and took care of my children. My mother continued to pay all the household expenses for myself and my children and continued to pay me $12 a week."

The will is involved and obscure, but this is clear, that testator intended to create a life estate in his widow, with remainder to his children. It is also clear on the language of the instrument that testator intended that in some conditions and for some purposes his widow should have the power to dispose of the property in fee, but what limitations testator intended to impose upon the power thus created is not so clear.

[1] There was a trust created for the maintenance, support, and education of the children during their minority; but the purposes of that trust had been accomplished before the conveyance to defendant, so that at that time testator's widow held the property to her own use for her life, with power to employ testator's estate in the continuance of the business, and for that purpose to sell or otherwise dispose of the property of the estate as she might deem best, or to consume any part of the corpus of the estate for the purpose of comfortably supporting and maintaining herself. Interlarded is a power to sell or otherwise dispose of real property either for cash or on credit. Appellant, defendant, construes this to mean only that the widow might exercise the power theretofore granted, as to realty, by disposing of it on credit—a method of exercising the power which would have been questionable in the absence of this provision. 18 Cyc. 325; Burks v. Hubbard, 69 Ala. 379. Perhaps so, but at least this interlarded power is not inconsistent with appellees' construction of the will, which is that it evidences the purpose of testator—the trust for the children having been accomplished—that the remaining power of disposition should be exercised to raise money either to continue the business or comfortably support and maintain the widow, and it is clear that the power was not so exercised. At the time of the conveyance in controversy, the trust for the children having been accomplished, the power of disposition remaining in the life tenant, to be exercised for her benefit, was, to quote the phrase of section 3423 of the Code, "not accompanied by any trust," but it was not an absolute pow-

er, and hence the conveyance is not governed by sections 3423, 3424, or 3425 of the Code. The power was not absolute, for the reason that it was given to be exercised for one or two designated purposes and none other; it might be exercised (1) in the continuance of the business left by testator, or (2), testator's children, several in number, having reached their majority, for the purpose of comfortably supporting and maintaining his widow. The power is expressly so limited by the will, and so falls under the influence of Chief Justice Stone's favorite maxim, "Expressum facit cessare tacitum," or its familiar equivalent, "Expressio unius," etc., which is said to be the dominant and most instructive of all the maxims of construction. Hughes on Procedure, vol. 2, p. 610; vol. 1, p. 286.

[2, 3] Nor is appellant a purchaser within the meaning of the Code sections to which we have referred. The authorities are agreed that, in general, purchase includes every mode of acquisition known to the law except that by which an heir on the death of an ancestor becomes substituted in his place as owner by the act of the law. 3 Washb. Real Prop. (6th Ed.) § 1824. And it may be conceded that ordinarily the Legislature would be held to have used the term "purchaser" in its legal sense, as defined by Washburn; but in the sections of the Code under consideration the Legislature seems to have used the term in what Blackstone called its "vulgar and confined acceptation" as applying to such acquisitions of land as are obtained by way of bargain or some other valuable consideration. 2 Black. Com. 240. This definition of purchaser accords with the legislative purpose which, it seems, is to preserve remainders in cases of this character as against everybody except purchasers who, on the faith of the power, have parted with value, and so these provisions are accepted in New York, from which state they have been transplanted into the law of this state. Terry v. St. Stephen's Church, 79 App. Div. 527, 81 N. Y. Supp. 119. Such being the meaning of the statute, appellant was not a purchaser; he was a volunteer. The considerations recited in the deed, viz. love and affection and grateful recognition of faithful services already performed, did not make a purchaser of the grantee. Nor do we find that in fact the grantor was indebted to the grantee. The grantee had been compensated for his services, adequately the evidence goes to show; but, however that may have been, appellees, as remaindermen, had an interest in the property,

and that interest could not be destroyed by the life tenant on consideration of love and affection or her grateful recognition of services already rendered. Such a conveyance was not an exercise of the limited power conferred by the will. Conducive to this conclusion is the fact also, not heretofore noted, that the conveyance to appellant reserved the use of the property to his grantor during her natural life. In other words, the gift, though in the form of a deed, was in effect testamentary in character; but the grantor had no power to dispose of the property by will. Terry v. St. Stephen's Church, supra.

[4] Further, it is urged for appellant that his grantor had power to dispose in any way of the property, for the reason that, according to section 3426 of the Code:

"Every power of disposition is deemed absolute, by means of which the donee of such power is enabled in his lifetime to dispose of the entire fee for his own benefit."

We have said enough to dispose, inferentially, of this contention; but, further it may be noted that it seems to be considered by good authority that this section of the Code operates only in cases where the terms of the instrument confer a general and beneficial power. And in Stewart v. Morris, 202 Ala. 113, 79 South. 579, it was said:

"The absence of any provision conferring a general and beneficial power to devise the land, much less the power to sell and convey, excludes the application of the provisions of section 3426 of the Code."

That opinion seems to be in line with the cases ruled by the courts in New York, where it is held that a power is not general and beneficial when others than the donee of the power—in this case the remaindermen—have, by the terms of its creation, an interest in its execution. Rose v. Hatch, 55 Hun, 457, 8 N. Y. Supp. 720. This section of the Code was also transplanted from New York. Stimson's Am. St. Law, § 1656.

The judgment of the court is that the conveyance to appellant was not within the power conferred upon the grantor by the will, and hence that, upon the death of the life tenant, the estate in remainder took effect. It follows that the judgment of the trial court should be affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BROWN, JJ., concur.