(125 So. 39)

POWELL et al. v. PEARSON.   (1 Div. 538.)

Supreme Court of Alabama.   Dec. 5, 1929.

Smiths, Young & Johnston, of Mobile, for appellants Rutland and others.

250

Inge, Stallworth & Inge, Pillans, Cowley & Gresham, and Stevens, McCorvey, McLeod, Goode & Turner, all of Mobile, for appellants Powell and Staples.

Harry T. Smith & Caffey, of Mobile, for appellee.

THOMAS, J. The suit is for construction of will and for a sale of real property and division of proceeds among joint owners.

The former decision, reported as Rutland v. Emanuel, 202 Ala. 269, 80 So. 107, arose over contest as to income from the lands made the subject of this suit. It was declared that the son of testatrix, Mr. Edward Emanuel, and his wife surviving him, had successive life estates in said property, and that the power of appointment contained in the mother's will, though sought to be exercised by the son in his will, had failed for the reason stated in that opinion. We find no reason in law or fact to modify the same. And we now proceed in adherence thereto.

The sufficiency of the present bill is challenged by demurrers on the part of several parties or classes of interests, and were overruled on facts found and recited in a general way, by the trial court in the judgment rendered. The effect of that ruling was that Edward and wife surviving him had respective life estates, there being no children and no effective execution of the power of appointment by reason of failure of contingencies on which that power was given, that the fee was not devised, and at her death in 1890 passed to her heirs at law of that date.

At the outset, we must consider what effect on the title to instant properties the residuary clause had. Item 11 from the bill as amended, was as follows: "Your oratrix is advised and believes, and therefore alleges that the remainder estate in said property, after the death of the said Edward C. Emanuel and his said wife, Mamie R. Emanuel, passed under the residuary clause of the said will of Isabella H. Emanuel, share and share alike, to her four surviving children: Josephine E. Macartney, Virginia E. Mitchell, Mary E. Barnewall, and Edward C. Emanuel."

And, if the residuary clause carried an interest in the property as affecting testator's "children living at her death" in 1890, the bill may be maintained by complainant, if the effect of that clause did not violate our rule against perpetuities. Sections 6921, 6922, Code of 1923, which are the same as like sections in preceding Codes. This is the serious insistence of certain of the appellants—Rutlands, Jones, Binion, Shields, Wheelers, Demings, and Clarks. It is conceded that a clause of a will that does not affect the dominant testamentary purpose evidenced by the instrument, though it offends the rule against perpetuities, will not render invalid other provisions of the will. Lyons v. Bradley, 168 Ala. 505, 53 So. 244; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565; Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Landram v. Jordan, 203 U. S. 56, 27 S. Ct. 17, 51 L. Ed. 88; Freeman's notes to Johnston's Estate, 185 Pa. 179, 39 A. 879, 64 Am. St. Rep. 621.

Mrs. Isabella H. Emanuel died September 27, 1890. Her will and codicil are of date of June 6, same year; at this time she recited the death of her two daughters, Fannie E. Rutland and Eveline Murrell, who left children in life at the time of death of testatrix. On June 28, 1894, a daughter, Mary E. Barnewall, no issue surviving her, died testate, giving her properties to her husband for life, with remainder to offices of a designated church, and that life tenant died after the wife. And testatrix left in life Mrs. Barnewall, as indicated, Mrs. Josephine E. Macartney, Mrs. Virginia E. Mitchell, and Edward E. Emanuel. When the will was made, and at the death of testatrix, said son was unmarried; four years thereafter he married Mamie Roux, who survived him; he died on February 15, 1917, and the exact date of her death is taken by counsel to have been in 1928 before this bill was filed; and there were no children from that marriage. The right of said widow to the income and profits from that property was established in this court. Rutland v. Emanuel, 202 Ala. 269, 80 So. 107.

The complainant states her source of title as follows:

"Mrs. Josephine E. Macartney died on July 1st, 1903, leaving a last will and testament, which was duly probated in the Probate Court of Mobile County, Alabama, under the terms of which she devised all of her real property to her sole surviving child, Edwin Macartney. Edwin Macartney died without issue on the first day of April, 1904, leaving a last will and testament, which was duly probated in the Probate Court of Mobile County, Alabama. The only disposition made of real estate by said will was as follows:

" 'I give, devise and bequeath unto my said wife all property of whatsoever nature, whether real, personal, or mixed, of which I may die seized or possessed, or to which I may, at my death, be entitled.'

"The complainant, Minnie Macartney Pearson, is the said wife of Edwin Macartney."

This would be the result if the residuary clause of the will passed an interest in said real property. That is, the complainant alleges title from two sources: (1) Through the will of her husband, and that of his moth-

er, and under item 11; and (2) that her husband or his mother were within the statute of descent and distribution, if testatrix, Isabella H. Emanuel, died intestate as to the fee.

Did the residuary clause offend the rule of sections 6921, 6922, Code of 1923, same as sections 1029, 1030, Code of 1896, as to the law of the instrument at the death of testatrix? Since the pertinent statutes are the same, the numerals employed in 1923 will be used. It is noted that section 6921 is merely introductory to that of our modification of the common-law rule of real estate. These statutes provide for two classes of conveyances—testamentary devises or trusts (1) "to the *wife and children*, or *children only*, severally, successively, and jointly; * * * if they come of age, *and in default thereof, over;*" (2) "to other than the *wife and children*, or children only, cannot extend beyond three lives in being at the date of the conveyance, and ten years thereafter." Such instruments, if conveyances, take effect on the date of execution and delivery, and, if testamentary, from the date of the death of testator. Crawford v. Carlisle, supra. See our cases of Lyons v. Bradley, supra; Mehaffey v. Fies, 217 Ala. 127, 115 So. 104; Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Pearce v. Pearce, 199 Ala. 491, 74 So. 952; Montgomery v. Wilson, 189 Ala. 209, 66 So. 503; Ashurst v. Ashurst, 181 Ala. 401, 61 So. 942. The foregoing authorities touch the rights of grandchildren and others under the last class or subdivision of the statute. Section 6922, Code 1923. The provisions affecting the *wife and children* of testator were the subject under the first class of discussion in Farr v. Perkins, 173 Ala. 500, 504, 507, 55 So. 923. See, also, Simmons v. Augustin, 3 Port. 69; Terrell v. Reeves, 103 Ala. 264, 271, 16 So. 54.

The distinction between the declared rule of the two classes, just indicated to have been made by the statute, was clearly stated by Mr. Justice Sayre in Lyons v. Bradley, 168 Ala. 505, 512, 53 So. 244.

To an understanding of the decision in Farr v. Perkins, 173 Ala. 500, 504, 507, 55 So. 923, 924, it should be said that the deed of the husband conveyed his lands to the wife for life, "at her death to vest and descend to our (the) youngest son, John Wheeler Moore, coming of age, in fee simple." And provided that, *in the event of the death* of John Wheeler Moore (before he arrives at the age of maturity and lawful marriage and before child born, or to be born), then to vest in the next youngest son, "to him and to his lawful heirs or children forever." And such was the declared trust and succession further extended to the next oldest son and his lawful heirs or children, so as to successively embrace all the sons in case of death and failure of issue, as prescribed in that instrument. And lastly it was provided that, in the event of death of

all the "sons (of whom there were three) without surviving children lawfully begotten," etc., the land was given, *after the life estate of grantor's wife*, to his "daughter Catherine."

As to this conveyance, providing " * * * that my said wife, Sarah, shall have a life estate and interest in said lands first; then said lands to descend and be inherited and enjoyed by our youngest son then alive and his lawful children. But in case of his death without lawful children, the residue or remainder interest to descend and be enjoyed by my next youngest son then alive and his lawful children forever, and in the event of the death of all my sons during the life of my wife, Sarah, then I give my said lands to my said daughter then living and to her heirs forever." was the declaration:

"By the terms of the deed upon the falling in of the widow's life estate there was vested in the youngest son, John Wheeler Moore, an estate 'in fee simple'; but the qualifying clause that immediately follows makes of it in reality a base or terminable fee, since it may be defeated by the death of the taker before arriving at the age of maturity, and without lawful issue.

"And the limitations over are not technically contingent remainders, but rather estates in fee upon conditional limitation. 2 Washb. on Real Prop. (5th Ed.) 590, 591; Horton v. Sledge, 29 Ala. 496. And under these authorities it is clear that the limitations over to the two other sons and the daughter, Catherine, were valid.

"But, since it was possible, as actually happened, that none of these successive contingent grantees could or would be alive, and also meet and satisfy the condition upon which alone his estate would cease to be terminable and become one in fee simple, either there was left in the grantor a quasi reversion, *a possibility of ultimate interest* not limited over by the deed, or else, by reason of the impossibility of the conditional limitations taking effect, a condition that arose during the lifetime of John Wheeler Moore by the death of his two brothers, one of whom left children (which defeated the limitation to Catherine), the terminable fee in John Wheeler became eo instanti a fee simple," (Italics supplied.)

The above provision held not offensive to section 1030, Code of 1896, same as section 6922, Code of 1923.

Applying the facts of the instant case under this statute, as testing the residuary clause of Mrs. Emanuel's will and the Edward C. Emanuel interest thereunder, by the eighth item and the codicil, and the former decision, 202 Ala. 269, 80 So. 107, the life estate was given to Edward, the fee to his children, if any, and gift *over* for life to his wife. This was within the first subdivision of the statute

and decision. Farr v. Perkins, 173 Ala. 500, 55 So. 923.

Mrs. Emanuel, as testatrix, could have given under the first clause of the statute, section 6922, Code of 1923, the lands in question to the heirs of Edward's body "if they come of age" and in "default thereof over." This she did not do; she introduced contingencies and limited estate for life *over* in Edward's wife. That is, in one contingency introduced by testatrix, she gave the land to the son Edward during *his life only*, then to his wife (if she survived him) a life estate only (202 Ala. 269, 80 So. 107), and, in default of Edward's *children living at her death*, she gave the son the limited power of appointment from the specified classes of sisters, nephews, or nieces as he "may will and direct forever." The right of delegation of the power of appointment within the law is recognized by the decisions of this court. Duncan v. De Yampert, 182 Ala. 528, 62 So. 673; Thorington v. Thorington, 111 Ala. 237, 20 So. 407, 36 L. R. A. 385. In Pitts v. Howard, 208 Ala. 380, 94 So. 495, it was said of such power as here, that it was "a limited power of appointment" as to the one-third interest there considered. And, under the last-named contingency, Edward was authorized to nominate sisters, and, if not offensive to section 6922, Code 1923, to nominate nephews and nieces. This power of disposition in Edward was not general, but specifically limited in the several respects by the will. Having so disposed of or provided for the fee or ultimate estate to the extent she desired, then exercised the right of the statute for the *gift over* under the contingency, to the wife surviving Edward, of the life estate to her. The wife survived the husband, and there was a failure of children; and hence a failure of that contingency as to surviving child or children who could take the fee. Thus again we are brought to the contingency on which rested the power of appointment declared in the mother's will in Edward, and the former decision that this power had lapsed for the reasons stated in the former opinion of this court—that he left a wife and no child. 202 Ala. 269, 80 So. 107, 109. That contingency on which the power rested was thus declared by testatrix:

" * * * But if my son should die. But if he should die leaving neither a wife, nor child nor children, then it is my will that all of said property shall go to his sister or sisters, nephew, or nephews, niece or nieces, as *he* may will or direct, forever.

" 'It is my will and I so direct that my executors herein named, or whomsoever may become my executor or administrator shall become, and they are hereby constituted and appointed trustee or trustees for all of this property herein devised and bequeathed to my said son Edward Emanuel; and it shall be his or their duty to manage, control, and take charge of said property, renting or leasing it, and the income and profits, after paying the taxes, insurance and other necessary expenses incident to the management of said property, to be by them paid to my said son Edward as my son shall wish or require.' "

This gift by the mother's will to Edward, then to the wife, and, in default of children, was the gift "over" to the wife that was authorized by the statute; that is, having given to a child for life, then to children of that child, and to surviving wife of said child, testatrix was not authorized to make other gift or "intermediary interest" in Edward's property, may not give to any other person than she did, within permission of the statute, except to the heirs of the body of such child if they come of age and the gift "over." Grimball v. Patton, 70 Ala. 626. Such are the limitations and permissions introduced into the first section of section 6922 of the Code 1923. The "gift over" in event of the default of "heirs of the body of survivor," etc. —that is, on default of the heirs of the body of Edward—testatrix had the right to give the fee or other remaining interest "over." This she did give over to Edward's surviving wife, a life estate, and not otherwise disposing of the fee. As to this is the pertinent observation of Mr. Smith: "In one contingency she gave an estate to her son, Edward, and an estate over to his (surviving) wife at his death, and this contingency happened." The legal effect thereof under our rule (section 6922, Code 1923) "exhausted her entire power of disposition of the property."

This is within the decision of Terrell v. Reeves, 103 Ala. 264, 271, 16 So. 54, where the gift over was to grandchildren living at death of Mrs. Terrell, the daughter and life tenant; and that of Farr v. Perkins, 173 Ala. 500, 55 So. 923, dealing successively with the children of which there were four.

It follows that if the gift *over* exhausted the permission of the statute, section 6922, she could not have dealt with her properties specifically or by way of the residuary clause to the declared result urged by appellee.

The case of Craig v. Rowland, 10 App. D. C. 402, cited by appellee, is not in accord with our decisions as affecting the descent of real property where testator has not made an effective and specific devise thereof. The rule of this jurisdiction is given expression in Johnson v. Holifield, 82 Ala. 126, 127, 2 So. 753, 755, as follows: "Where a specific devise of real property is not valid and effectual, either from incapacity of the devisee to take, or from a lapse by his death during the lifetime of the testator, or from the non-happening of some event or contingency on which the devise takes effect, the estate so undisposed of descends to the heir at law, notwithstanding there may be a residuary devise." Trustees of Cumberland University v. Caldwell, 203 Ala. 590, 595, 84 So. 846; Hemphill v. Moody, 64 Ala. 468. See, also, Steele v. Crute, 208

Ala. 2, 93 So. 694; Caldwell v. Caldwell, 204 Ala. 161, 85 So. 493; Crawford v. Carlisle, 206 Ala. 379, 89 So. 565; Henderson v. Henderson, supra.

The statute, that all property not disposed of by will and testamentary instruments is required, and must be administered and distributed as in case of intestacy (section 10583, Code of 1923; section 6158, Code of 1907, and section 4248, Code of 1896), was of force when the foregoing decisions were rendered. Johnson v. Holifield, supra, and Trustees, etc., v. Caldwell, supra. Said statute was the same in the earlier and later Codes (Greene's Ex'r v. Speer, 37 Ala. 532, 533), and recodified unchanged under the construction given in Johnson v. Holifield, 82 Ala. 126, 2 So. 753.

And it is the rule of this state, that a general residuary clause, without express, specific, and unequivocal testamentary direction and intention, is not sufficient to defeat descent under statute of undevised real property. Johnson v. Holifield, supra; Trustees, etc., v. Caldwell, supra. This phase of complainant's source of title (Mrs. Pearson), or that of others (Mitchell and Mercer), the parties grantors of Staples and Powell, cannot be maintained, under their insistence, as the vesting of an interest in said real properties by way of the residuary clause, item 11 of Isabella H. Emanuel's will.

When Mrs. Emanuel's will was before this court and construed in part in 202 Ala. 269, 273, 80 So. 107, 111, the following observation was made as to the power of appointment, under which Staples and Powell also claim: "A power of appointment, of an estate in remainder to members of a class, was thereby conferred on Edward, subject, however, to the condition, the contingency, that neither wife nor child survived him. This expression of the testatrix's intent consists alone with the idea that she had thereinabove fixed the beneficiaries of the precedent estates in every contingency except the one defined as a condition to the exercise of the power of appointment, viz. the nonsurvival of neither wife nor child or children. If child or children had survived, the power of appointment could not have been exercised. If a wife survived— as in fact was the case—then the power of appointment could not be exercised. According appropriate effect to be indicated manifestations of the intent of the testatrix, interpreted in the light of the circumstances under which she entered upon the final task of disposing of her estate, and of the further fact that the face of instrument bears unmistakable evidence of inaccurate expression, our conclusion accords with that prevailing with the court below, viz. that 'or' should be substituted for 'and' in the provision reading:

"'But if he should die leaving a wife and [or] child or children, then his said wife shall have and enjoy the use, benefits and profits of the same, during her life only. * * * *' "

We adhere to that ruling and construction. The will made disposition of that portion of her real properties before the court, in several contingencies indicated and necessary to the power of appointment, was the expression of intention of devise or disposition we have indicated on former appeal. When, therefore, testator declared in the residuary clause that "all the remainder of my property of which I have not herein specifically devised * * * I give and bequeath to all of my children living at my death," she had not in mind the property she had sought to devise in item 8.

When the will is considered in its four corners, testatrix sought by it to deal justly and equally with her children—son, daughters and children of deceased daughters—as best she could, or as permitted by the facts she expressed in her will. She so treated certain of her grandchildren, the children of her deceased daughters, Evelin E. Murrell and Fannie E. Rutland. Why then should she exclude other of her children as to the instant moiety of her real property, if testatrix intentionally dealt with such property as that of a remainder estate not "specifically devised" by the use of the words of item 11, "bequeath to all of my children living at my death share and share alike." Having disposed of her real property to the several daughters, son and children of two deceased daughters, her grandchildren named by class, there is evidenced no intent of testatrix to enlarge the general offices of the residuary clause. There is no intent to be found in the codicil to extend the residuary clause to the lands in question. The contrary intent is shown in the limitations therein employed "in regard to the sale of said property and its disposition after his (Edward's) death," "shall remain in full force as provided above" in item 8 of the will.

It follows that the primary contention of complainant-appellee, and the secondary contention of appellants Staples and Powell are not maintained. The former decision, 202 Ala. 269, 80 So. 107, 109, and our observations have disposed of the aforementioned claim of Staples and Powell to the extent that under the will the fee-simple title or interest therein of a portion of this property vested in Edward Emanuel, and by the will of the latter passed to Thomas E., John E., John Mitchell, and their sister, Mary Mitchell Mercer, and that it was conveyed by the Mitchells and Mercer to defendants Staples and Powell. The same may be said of the interest in said property sought to be devised by Edwin Macartney, through the will of Edward C. Emanuel.

We have indicated adherence to the former opinion, and will say further that, though testatrix in the first clause of item 8 describes the property devised to her son without indi-

cation of nature or character, this is done immediately and explicitly in the next or succeeding and habendum clause of that instrument. It was that Edward use and enjoy during his life only, limits his right of disposition, provides for trustees to exercise within the discretion and right of sale and conveyance. It is provided as indicated, and further that "it is my will, and I so direct, that none of said property shall be sold during the life of my son, unless said trustees shall concur with my son in the opinion that a sale would be manifestly to the interest or advantage of my son; and in the event such a sale should be made, it is my will that said trustee or trustees shall join in the conveyance to the purchaser and that the purchase money shall be paid to the trustee or trustees, and the amount so realized shall be by them in property to be held and owned by my son upon the same terms and conditions in every respect, both as to his estate therein, and as to the mode and manner of inheritance and descent, and as to whom it shall go after his death, as the property herein devised is held by and for him."

These limitations are not entirely removed by the codicil, providing, "except that the provision in regard to the sale of said property and its disposition after his death, shall remain in full force as provided above," and thus retaining the trust.

Like material limitations imposed as to the power of appointment are inconsistent with the vesting of the fee in Edward. See Slaughter v. Hall, 201 Ala. '212, 77 So. 738, and Stanley v. Daniel, 209 Ala. 588, 96 So. 783, for the effect of limiting a general grant by way of the habendum clause, and that that may be effectually done.

The statute providing that all conveyances to land construed as disposing or vesting the fee unless expressly limited does not apply. It is the rule that, when the granting clause does not designate the estate, without more, it is held to vest the fee; to the contrary when the instrument shows the estate is limited by the habendum clause, and that a less estate than the fee was intended to be conveyed or devised. Section 6900, Code of 1923; section 1020, Code of 1896; Moore v. Lee, 105 Ala. 435, 17 So. 15; Wolf v. Loeb, 98 Ala. 426, 13 So. 744; Patton v. Beecher, 62 Ala. 579. The fair construction of the will and codicil of Mrs. Emanuel indicates the intent to create a less estate in the son and his wife surviving him, and there is no room for application of the statute. Section 6900, Code 1923; Long v. Holden, 216 Ala. 81, 112 So. 444, 52 A. L. R. 536; Lowery v. May, 213 Ala. 66, 71, 104 So. 5; Stanley v. Daniel, 209 Ala. 588, 96 So. 783.

If in item 11 the executors of Mrs. Emanuel were made cotrustees with Edward of the property, it was for the like purpose and for that of exercise of judgment and discretion, to the end that sale may be made or denied, if sold for the receipt and reinvestment of the purchase moneys. Such active and important duties as to the corpus of the estate and the enjoyment of its income and profits for the time of the limited estate were wholly inconsistent with the intent to vest the fee in Edward. And, while the remainder over in fee was contingent, the trustees represented those who were to take under the law and for the preservation of such ultimate purposes and interests, and was not a naked or dry trust (Gindrat v. Western Ry. of Ala., 96 Ala. 162, 11 So. 372, 19 L. R. A. 839; Coker v. Hughes, 205 Ala. 344, 87 So. 321; Bibb v. Bibb, 204 Ala. 541, 86 So. 376) during Edward's life (Henderson v. Henderson, 210 Ala. 73, 85, 86, 97 So. 353).

The insistence of some of the parties before the court, as Staples and Powell, that the power of disposition was given Edward and the trustees under the will, and, although within the reasonable construction of section 6931, Code of 1923 (section 1049, Code of 1896), cannot be sustained under limited power contained therein. The absolute power of disposition or appointment was not conferred, as we have indicated, upon Edward or upon the executors or trustees, nor upon Edward, executors or trustees, jointly or severally. The power given *to sell* was materially limited and not general and beneficial within the statute; nor was the power *to devise* by appointment given Edward "general and beneficial," and was not freed of a trust under the statute as defined by the authorities. Sections 1046-1049, Code of 1896; (sections 6928-6931, Code of 1923; Henderson v. Henderson, 210 Ala. 73, 97 So. 353; Yockers v. Hackmeyer, 203 Ala. 621, 84 So. 709; Stewart v. Morris, 202 Ala. 113, 79 So. 579; Nabors v. Woolsey, 174 Ala. 289, 56 So. 533; Mims v. Davis, 197 Ala. 88, 72 So. 344; Pendley v. Madison, 83 Ala. 484, 3 So. 618; Hovely v. Herrick, 152 Wis. 11, 139 N. W. 384.

The effect of our decisions under these statutes is that the same operate only when the instrument confers a general and beneficial power of disposition to the donee, and do not apply when others than the donee of the power have by the terms of its creation an interest in its execution, or the power is limited. Examples stated in the decisions, as to continuance of business of testator, or for the support and maintenance of testator's widow. For definition of "absolute power" of disposition under our statute, see Wells v. American Mortg. Co. of Scotland, 109 Ala. 430, 442, 20 So. 136; Alford v. Alford, 56 Ala. 350; Bolman v. Lohman, 79 Ala. 63; 4 Kent. Comm. 320; and citations to section 6931, Code of 1928.

In Jemison v. Brasher, 202 Ala. 578, 582, 81 So. 80, is the statement that sections 6928-6931, Code of 1923, protected remainders ex-

pressly limited to particular estates, "leaving the class of future estates of *mere reversions* and remainders by implication, subject to the common-law doctrine." Young v. Sheldon, 139 Ala. 444, 448, 36 So. 27, 101 Am. St. Rep. 44; Smith v. Phillips, 131 Ala. 629, 632, 30 So. 872; Wells v. Am. Mortg. Co., 109 Ala. 430, 20 So. 136. In Hood v. Bramlett, 105 Ala. 660, 663, 17 So. 105, it is observed these statutes were confirmatory of the appropriate common-law rule. Adams v. Mason, 85 Ala. 452, 455, 5 So. 219; Rutledge v. Crampton, 150 Ala. 275, 282, 43 So. 822; Nabors v. Woolsey, 174 Ala. 289, 294, 56 So. 533.

It will be borne in mind that we *are not* considering a *remainder created* by the instrument (26 C. J. 1017; Robinson v. Blankenship, 116 Tenn. 394, 92 S. W. 854), nor are we considering a *reverter* arising by construction of the instrument or by operation of law under the instrument (40 Cyc. 1048; 21 C. J. 1018, §§ 180, 181), but that of a mere possibility or a status that eventuated by the failure of several contingencies employed. The distinction between these three interests and a mere possibility is recognized. 21 C. J. pp. 1117, 1118, 1018; 40 Cyc. 1048.

In 21 C. J. p. 1018, § 181, it is declared: "A reversion is never created like a remainder by deed or writing or other act of the grantor who creates it at the very time when the particular estate is created, but arises by *construction and operation of law wherever a grantor has conveyed less than his whole interest or estate, the undisposed portion being his when the grant is terminated*." (Italics supplied.)

And the right to convey or devise such a *reversion* is very different from such right as affecting a *possibility of a reverter*. In Clements v. T. S. Faulk & Co., 181 Ala. 219, 61 So. 264 (headnote 4), it is held: *"Deeds; After Acquired Title.*—Where two of eight children of a deceased owner of land conveyed their undivided interest in the land, with covenants of warranty as to title, and one of the other eight children subsequently died, the interest of the grantors in the land as the heirs of such other child did not pass under the deed to their grantee, since the covenants referred only to the interest which they intended to and in fact did convey."

As to the transfer of a reversion, it is said (21 C. J. p. 1020, § 183): "A reversion is devisable, descendible, and alienable inter vivos, in the same manner as an estate in possession, whether the reversion is subject to a mere term of years, or is expectant on a freehold estate."

And as to the "Possibility of Reverter" (21 C. J. p. 1018, § 180): "A possibility of reverter is, at common law, not an estate; it is inalienable, not assignable, not devisable, unless made so by statute; but it is descendible, and may be released to him in possession.

Until the contingency happens the whole title is in the grantee. It has been held that this possibility is not subject to merger by the union of the possibility of reverter with the fee conditional in the heir at law. A sale of the grantee's interest in property in which he has a qualified fee does not affect the grantor's right to have the property under his possibility of reverter when the fee has terminated." 30 Cyc. 1474. See our Clements v. T. S. Faulk & Co., supra.

In 40 Cyc. 1048, the distinction is thus stated, that certain estates in reversion may pass by will (Alexander, etc., v. DeKermel & Co., 81 Ky. 345; Steel v. Cook, 1 Metc. (Mass.) 281; Austin v. Cambridgeport Parish, 21 Pick. (Mass.) 215), "but not so of a *mere possibility of reverter*." Trustees of the Presbyterian Church of Paris v. Mattic Venable, 159 Ill. 215, 42 N. E. 836. In the last-cited case the possibility of reversion considered was on dissolution of a corporation to which testator had deeded the property. To this we will again advert. And it is held that contingent remainders are only devisable when the persons to take are ascertained and only the event is uncertain. 40 Cyc. p. 1048, § H, and note 27.

The CHIEF JUSTICE and Mr. Justice SAYRE disagree as to the effect of the trust upon the fee and the time when those who take is to be determined.

Further material inquiries are: What is the date of determination of those who take under the statute, after the life estates have fallen in? Who are the individuals who may take? And is the prospect or possibility of reverter the subject of devise or conveyance? In Bingham v. Sumner, 206 Ala. 269, 89 So. 479, 481, is the following observation of a lapsed devise: "Testatrix did not anticipate, nor did she make provision for, the contingency that has happened, i. e., the death of her children before her husband. The result is that her property, after the life estate given to her husband—whether by the will or by statute is immaterial just now—will descend to her blood—a circumstance usually considered as of some significance in the construction of wills—to appellant."

Under the wills of Josephine (who died July 1, 1903) and Edwin (who died April 1, 1904) Macartney, alleged predecessors in interest and title to complainant, and that of Mrs. Mary E. Barnewall (who died June 28, 1894), alleged predecessor in interest and title to Rector, Wardens and Vestry of Christ Church of Mobile, were their estates and interests, by reason of the lapse of said devise created in said property such as or were devised by the will of the Macartneys and Mrs. Barnewall? Until the death of Edward, the possibility of children by Mamie (whom he married in 1894, and lived with as husband and wife to 1917) made the interest before us

not more than a *mere or bare possibility* of reverter to other children or heirs at law of testatrix. Before that death in 1917, the nature of the interest in said properties of the Macartneys, mother and son, who died, respectively, July 1, 1903, and April 1, 1904, was not more than a possibility of a reverter; and such was the case when Mrs. Barnewall died on June 28, 1894. It is not even shown that Edward had married before the date of the death of his sister, Mrs. Barnewall.

In the Massachusetts cases cited, the provisions for *a reverter were contained in the instrument or lease,* and the reverter was dependent, by the terms of the instrument, on stated condition subsequent. It is said in Dunlap v. Bullard, 131 Mass. 163: "Where an estate is conveyed to be held by the grantee upon a condition subsequent, there is left in the grantor a contingent reversionary interest. It was said in Austin v. Cambridgeport Parish, 21 Pick. 215, 223, that the grantor's contingent interest in such case was an estate which was transmissible by devise and passed under a residuary devise in the will of the grantor. It was declared to be a contingent possible estate, which, united with that of the tenants, 'composed only the entire fee simple estate, as much so as in the ordinary case of an estate for life to A., remainder to B.' In Brattle Square Church v. Grant, 3 Gray, 142, 147 [63 Am. Dec. 725], it was said, that when such an estate is created 'the entire interest does not pass out of the grantor by the same instrument or conveyance. All that remains, after the gift or grant takes effect, continues in the grantor, and goes to his heirs. This is the right of entry, which, from the nature of the grant, is reserved to the grantor and his heirs only, and which gives them the right to enter, as of their old estate, upon the breach of the condition.' These considerations are equally applicable whether the estate subject to the condition subsequent is an estate in fee, or an estate for life or years. They apply *where, by the terms of an instrument which purports to be an underlease, there is left in the lessor a contingent reversionary interest, to be availed of by an entry for breach of condition which restores the sub-lessor to his former interest in the premises.*" (Italics supplied.)

The headnote to Austin v. Cambridgeport Parish, 21 Pick. (Mass.) 215, is: "A lot of land was *granted on the condition* that it should be held for the support of the first and all succeeding ministers who should be settled by a religious society to preach in a meetinghouse on another lot and all other meetinghouses which should subsequently be built on the same site; and *in default of the appropriation* of the rents and profits thereof to that purpose, *the deed was to be void,* and the land to *remain in the grantor and his heirs* as though the conveyance had never been executed. The proprietors of the meetinghouse lot, to whom the parsonage lot above mentioned had also been transferred, *took down the meetinghouse and erected a new one on a different site,* having voted however that the meetinghouse lot should be reserved for the erection of a meetinghouse at some future period when they might deem it expedient, and this lot had remained vacant three years and a half when an *action was commenced to recover the parsonage lot for a breach of condition.* It was held, that there had been a forfeiture by reason of a breach of the condition; that *the grantor's contingent interest was such an estate as was transmissible by devise,* and that it passed under a residuary clause in the grantor's will; and that *under the Revised Statutes, the devisee,* upon breach of the condition, *might institute a suit to recover the land,* without making an actual entry." (Italics supplied.)

Such is not the case before us. It is that of a mere possibility of reverter, where no title was left in testatrix, and no contingent reversionary interest was to be availed by a breach of any condition subsequent. The title was divested out of testatrix by the conditional estates, and the trust created for the ultimate recipient of the title. The condition before us was the result of the failure of children surviving, etc. Since Edward was not married at the death of his mother, the provision for his surviving wife and children was merely contingent remainder; and when Edward died and the wife survived with no children, the gift to her for life was the *gift over,* and exhausted the power of Mrs. Emanuel (sections 6921, 6922, Code 1923) in devising to others than the children. Had Edward left a child surviving, and had that child come of age and survived the wife, said child would have taken the fee; and that contingent remainder created by testatrix would have become vested though rested upon the double contingency stated, of leaving a wife and leaving a child surviving her. There was a third contingency of the death of Edward, with no wife and child surviving, and his having exercised the limited power of appointment. And the nature and character of the estates that passed by said will to Mrs. Emanuel's heirs were base and qualified, and subject to be determined or rested upon the happening, or the failure thereof, of the three or more contingencies introduced into Item 8 and the codicil by testatrix. See our cases Farr v. Perkins, 173 Ala. 500, 507, 55 So. 923; Carter v. Couch, 157 Ala. 470, 47 So. 1006, 20 L. R. A. (N. S.) 858; Horton v. Sledge, 29 Ala. 478, 496.

And the legal effect of a *mere reversion* to a demisor or grantor as affecting the right of dower was declined of decision by Judge Stone in Edwards v. Bibb, 54 Ala. 475, 486. See, also, 16 Cyc. 603, 604; 3 Am. & Eng. Enc. of L. (2d Ed.) 751. Such interest was a mere

possibility in Clements v. T. S. Faulk & Co., 181 Ala. 219, 61 So. 264.

And the *possibility of a reverter* at common law was held not an estate, and may not be devised or conveyed. 40 Cyc. 1048; 21 C. J. p. 1018, § 180, as we have indicated.

Adverting to the further difficult question of the rule governing the *time when* the descent would be accomplished by way of reversion, Mr. Story has this to say of the effect of the common law (Barnitz's Lessee v. Robert Casey, 7 Cranch, 456, 469, 470, 3 L. Ed. 403, 408):

"In the next place it will be necessary to consider what is the nature of an executory devise as to its transmissibility to heirs, where the devisee dies before the happening, of the contingency.

"And it seems very clear that at common law, contingent remainders and executory devises are transmissible to the heirs of the party to whom they are limited, if he chance to die before the contingency happens. Pollexfen 54 1 Rep. 99 Cas. Temp. Talb. 117. In such case, however, it does not vest absolutely in the first heir so as upon his death to carry it to his heir at law, who is not heir at law of the first devisee, but it devolves from heir to heir, and vests absolutely in him only who can make himself heir to the first devisee at the time when the contingency happens, and the executory devise falls into possession.

"This rule is adopted in analogy to that rule of descent which required that a person who claims a fee simple by descent from one who was first purchaser of the reversion or remainder expectant on a freehold estate, must make himself heir of such purchaser at the time when that reversion or remainder falls into possession. Co. Lit. 11 (b) 14, (a) 3 Rep. 42. Nor does it vary the legal result that the person to whom the preceding estate is devised, happens to be the heir of the executory devisee, for though on the death of the latter the executory devise devolves upon him, yet it is not merged in the preceding estate, but expects the regular happening of the contingency and then vests absolutely in the then heir of the executory devisee."

Under the foregoing application of that rule, upon the death of Mrs. Isabella H. Emanuel, an estate for life was vested in her son Edward C., with remainder in fee in the heirs or trustees of testatrix at the time of her death, determinable upon the happening of specific contingencies provided, such an estate in the nature of *a base fee*, passing from heir to heir, not of the first taker (as her heirs at time of her death), but from heir to heir of said testatrix, and, at the happening of the contingency provided, vested in *those who were at the time of such failure of* last contingency the heirs at law of Mrs. Isabella H. Emanuel under the statute and her

trust created by item 8 of the will and codicil thereto.

Under this rule, at the time of the death of Edward C. Emanuel, his sister, Mrs. Josephine E. Macartney, a child of Mrs. Isabella H. Emanuel, was dead, and was not an heir of testatrix; and her son, Edward Macartney, nor his wife, now Mrs. Pearson, were of the succession as to this property of Mrs. Emanuel; nor were they at the death of Edward Emanuel (1917), or that of his wife (1928), and took no title or interest in said property. The same may be said of Mrs. Barnewall, who died in 1894, and her will to her husband and by him to the church.

The will creating the life estate and a trust to protect the corpus, or the changes effected by the codicil, and the contingencies for the remainders that failed, created a mere possibility of a reverter that remained as to title, not in testatrix, but in her trustees. The title therefore did not descend eo instanti at the death of testatrix to her heirs at that time, but heirs to be determined at the time of the termination of the life estate of the son and failure of children surviving—at such time all contingencies had become certain and the purpose of the trust ceased to exist. Henderson v. Henderson, 210 Ala. 73, 97 So. 353.

Are there statutes and decisions in this jurisdiction contrary to the rule of the common law above stated by Judge Story in Barnitz's Lessee v. Robert Casey, 7 Cranch 456, 3 L. Ed. 403? It has long been provided for real estate of persons dying intestate that it descends as indicated in the several sections of the statute. Sections 7365, 7374, Code 1923. And the "heirs at law" of a deceased person are those who, in the absence of a will, are appointed by law to inherit (Hatter v. Quina, 216 Ala. 225, 113 So. 47); lineal descendants take ancestors' share (section 7366, Code 1923, section 3755, Code 1907); and the degree of kindred is computed according to the rule of the civil law, section 7368, Code 1923; and in section 10579, Code 1923, is the provision that any interest in real property *devised to one who does not take* descends as in case of intestacy, etc. This is not within that statute, for there was no devise of estate to a person or corporation incapable of taking.

The provisions of section 6837, Code 1923 are that persons capable of disposing of their properties may alien their lands "and any interest therein, * * * immediate or future, certain or contingent," in the manner prescribed by law. This statute declares that there must be an "interest therein."

The case of Culley v. Elford, 187 Ala. 165, 172, 65 So. 381, 384, considered a will that devised to three daughters for life only, and recited that "from and immediately after her (daughter's) death, to the issue of her body at the time of her death, to them their as-

signs and heirs forever. * * * Should either of my daughters die without an heir of her body, it is my will that the property devised to her by this will shall be equally divided between my surviving daughters, but should any of them die leaving heirs of their bodies, such heir or heirs shall take their mother's share to be equally divided among them." This court said: " * * * She gave a life estate to her daughter with remainder 'to the issue of her daughter's body at the time of her death,' and then she provided that, should her daughter die without an heir or heirs of her body, meaning lineal descendants, then over; and appellants claim under this last limitation. Their interest is remote and contingent, and may never, probably will never, come into possession; but it is more than a mere hope or expectancy; it has an existing legal foundation in the will, and is an interest for the protection of which the powers of the chancery court may be invoked. 3 Pom. Eq. Jur. § 1286."

It will be noted that the Culley will or codicil thereto went further than that of Mrs. Emanuel; it provided for the vesting of the fee in the limitations over to surviving daughters or to "the issue of her body at the time of her death."

The text of 3 Pomeroy's Eq. Juris. pp. 3092–3095, cited by Mr. Justice Sayre in the Culley Case, supra, is as follows:

"A vested remainder is as truly a present fixed property or ownership as is an estate in possession. There may be interests or so-called estates in land or chattels, based upon some existing limitation, conveyance, or will, which are future and contingent, as depending upon the happening of some uncertain event, or limited to some uncertain person, but which are nevertheless interests, and not mere hopes or expectancies without any existing legal foundation. The ordinary contingent remainders, executory devises, conditional limitations, and the like are illustrations. Secondly, a lower grade of future interests may be called the potentiality of acquiring future property from the performance of some agreement or arrangement already entered into, but which is still executory. * * *

"Finally, there is a mere expectancy arising from some social or moral relation, and not based upon any limitation, trust, contract, or other legal relation, such as the hope which an heir apparent or presumptive has of inheriting his ancestor's estate, or the hope of a bequest under the will of a living friend. * * *

"The American legislation has generally been broader, and authorizes the assignment at law of such future expectancies and possibilities, when coupled with an interest, whether connected with real or with personal estate. Neither the English nor the American stat-

utes allow the legal assignment of mere naked possibilities or expectancies not coupled with an interest. * * *

"Under the statutes described in a preceding paragraph, all future contingent interests in things real or personal, and also all possibilities, coupled with an interest, of acquiring property, real or personal, may be granted or assigned at law, so that the grantee or assignee acquires a legal right or interest, the enforcement or protection of which comes within the jurisdiction of the law."

See 2 Ferne on Remainders [23] VII, and First National Bank v. Cash, post,'p. 319, 125 So. 28.

In Smith on Real and Personal Property, 249, is the following: "The word 'possibility' has a general sense, in which it includes even executory interests, which are the objects of limitations [e. g., contingent remainders, etc.]. But in its more specific sense, it is that kind of contingent benefit which is neither the object of a limitation, like an executory interest, nor is founded in any lost but recoverable seisin, like a right of entry. And what is termed a bare or mere possibility signifies nothing more than an expectancy, which is specifically applied to a mere hope of succession, unfounded in any limitation, provision, trust, or legal act whatever; such as the hope which an heir apparent or presumptive has of succeeding to the ancestor's estate."

In Tiffany on Real Property, p. 525, § 147, subsec. (b), is the following text: "A contingent remainder, since it is merely a possibility of an estate, is, by the theory of the common law, not capable of transfer inter vivos, except by fine or common recovery. It might, however, even at common law, be released to the owner of an estate in possession or remainder. And an attempted transfer of such an interest, if made on valuable consideration, will be recognized and enforced in equity, after the estate has vested, as a contract to convey. Moreover, under the doctrine which has been so generally asserted in this country, that a conveyance of land, especially if containing a covenant for title, will operate to transfer by estoppel any after acquired estate, a conveyance by one having a contingent remainder would frequently effect a transfer of the estate in the land when it subsequently vests."

It was no doubt intended by section 6837, Code 1923, to give the right of conveyance of immediate or future, certain or contingent "interest in lands." And sections 6903–6905, Code of 1923, are to the effect that a remainder in real or personal property is limited to take effect on the death of any person, heir, etc., construed to mean heirs or issue living at death of person named as ancestor; an estate in reversion is residue of an estate usually the fee left in the grantor and his heirs after the determination of a particular estate which

260

he has granted out of it. Section 3400, Code of 1907; section 6904, Code of 1923. The rights of *the reversioner are the same as those* of a vested remainderman in fee. Section 6904, Code 1923.

The foregoing statutes are without application to a mere possibility of a reverter that existed at the time of the death of the Barnewalls and Macartneys, before the death of Edward Emanuel, and devises or conveyances made theretofore of a mere possibility of a reverter were without effect. The interests of the Mitchells and Mrs. Mercer being conveyed to Powell and Staples of date of May 17, 1926, after the death of Edward Emanuel and before the death of the wife Mamie, in 1928, carried a vested interest in said properties to the extent of an undivided interest in said properties indicated in paragraph 12 of the bill as amended.

Such is a result of the rule that obtains, that the real property undisposed of by the mother's will (beyond the purposes of the trust) was as declared in Johnson v. Holifield, 82 Ala. 123, 2 So. 753, and descended to the heir at law.

And we must find the persons who take under the statute, as of the date of the termination of the life estate of Edward in 1917, without child or children, and not that of the death of the mother in 1890, or the death of Edward's wife in 1928.

It is the opinion of the writer that the decree of the trial court, that at the death of Mrs. Emanuel in 1890 the fee passed to *"her then heirs at law,"* was in error.

Mr. Justice BROWN concurs in the views I have expressed.

It appears to the writer, aside from the fundamental difference between a possibility of a reverter that existed from 1890 to 1917, by reason of Edward's married life and possibility of children, and that of a reverter from his death in 1917 to that of his wife in 1928, the change from law to law, as we have indicated, would fix the time at the death of Edward, and not that of his mother. This is material, as Staples and Powell's deed by Mitchell and his sister (Mrs. Mercer) was in 1926.

It may be further suggested that, if the time and law of force be not taken as the date of change from the *possibility of reverter* to that of a *reverter* on the death of Edward (1917), but rather as that of the time and law in force at the death of Mrs. Isabella H. Emanuel in 1890, an added difficulty is presented in determining the persons who are the objects (recipients) of the reverter under the statutes of descent and distribution. It is that the law of descent of real estate in the Code of 1886, § 1915, and that of the Code of 1907, § 3754, are materially different in some respects to be indicated. Subsections 1 are the same; subsection 2, at the time of Mrs. Emanuel's death was, if there are no children, or their descendants, "then to the brothers and sisters of the intestate, or their descendants, in equal part" (Code 1886, § 1915, subsec. 2), while that at the time of the death of Edward provided, "If there are no children or their descendants, then to the father and mother, in equal parts" (Code 1907, § 3754, subsec. 2). So, also, is there material change where there is "one surviving parent," under the law of force in 1917 (Code 1907, § 3754; Code 1923, § 7365); as to the interest of brothers and sisters, and as to that of the husband and wife under the respective contingencies indicated in the statute.

The question decided by the trial court, "that the fee in said property was not devised by the will, but remained in the testatrix, and at her death in 1890 passed to her *then heirs at law,* under the law of Alabama," is in accord with the views of ANDERSON, C. J., and SAYRE, GARDNER, BOULDIN, and FOSTER, JJ.

THOMAS and BROWN, JJ., dissent on this question as hereinabove indicated and for the reasons stated at length.

Affirmed.

ANDERSON, C. J., and SAYRE, GARDNER, BOULDIN, and FOSTER, JJ., concur.

THOMAS and BROWN, JJ., dissent as indicated.