# Farr, *et al*, *v.* Perkins, *et al.*

## *Ejectment.*

### (Decided June 16, 1911.   55 South. 923.)

1. *Deeds; Taking Effect; Death of Grantor.*—Notwithstanding the common law rule that an estate in remainder could be supported only by a prior freehold, an estate in land may be created to take effect in possession on the death of a grantor, with a reservation to the grantor of the intervening use and possession.

2. *Same; Remainders; Precedent Estate.*—Where a husband conveyed lands to his wife for life with all the privileges and appurtenances, and at her death to descend to the youngest son in fee, and in the event of the youngest son's death before he became of age, and in the event of his death without issue, then to the second youngest son, and so on to the next oldest child, and in the event of the death of all the sons without heirs surviving, then the remander after the like estate to his daughter Catharine, and her heirs forever, the deed created in the wife an equitable separate estate, the legal title during her life, and the life of the husband vesting in the husband as trustee for the wife, and operating as a complete divestiture of the grantor's estate, and creating a prior particular freehold sufficient to support the remainder in the youngest son.

3. *Same; Construction; Base Fee.*—Under the deed above set forth, on the falling in of the widow's life estate, there was vested in the youngest son an estate in fee, which, however, was a base or qualified fee, since it was subject to be defeated by his death before arriving at the age of maturity without lawful issue.

4. *Same; Words of Limitation or Purchase.*—The above deed examined and held, that since the youngest son was never married, but survived his two older brothers, the oldest of which left children surviving him, the deed did not indicate an intent on the part of the grantor to engraft contingent remainder to possible grand children or to the conditional limitation to his several sons, nor to make such possible grandchildren joint purchasers with their respective fathers, but that the explanatory clause appended to the grant to each son was intended to restrict the descent in each case to the next youngest son "then alive," the varying phases referred to heirs or lawful heirs, or children, being understood as words of limitation intended only to convey a contingent base fee to the son, and not as words of purchase to the grandchildren, so as to vest title to the entire property in the surviving children of the oldest son, on the death of the youngest son without issue.

5. *Same; Conditional Limitation; Construction.*—Since it was possible under the deed, as actually happened, that none of the successive contingent grantees would be alive and satisfy the conditions in the deed, either there was left in the grantor a quasi reversion, the possibility of ultimate interests not limited over by the deed, or else by reason of the impossibility of the conditional limitations

taking effect, a condition which arose during the lifetime of the youngest son by the death of his two older brothers, one of whom left children, which defeated the limitation to the daughter, so that the terminable fee in the youngest son became a fee simple, although he died after his two brothers, but without issue.

6. *Same; Life Estate; Limitations Over; Validity.*—Where a grantor conveyed property to his wife with remainder to their youngest son in fee except that if he should die before maturity without issue, then to the next youngest son, and so on to each son, and then to the daughter, were valid conditional limitations.

7. *Perpetuities; Limitation Over to Children.*—Under section 3417, Code 1907, a deed to a wife for life with remainder to the youngest son in fee except in case he died before maturity without issue, and in case none of them died leaving lawful issue, then to the grantor's daughter and her heirs, was not a limitation violative of the rule against perpetuity.

8. *Judgment; Against Landlord; Parties.*—Since the object of sections 3840, and 3844, is either to bind the landlord by the judgment, or to permit him as of right to effectually defend the suit in his own proper person, and since a judgment for possession in fact operates only on the tenant in possession, the intervention of a false landlord in such action could not give plaintiff a right either to a joint judgment against both the landlord and the tenant. or against the landlord separately, in case the tenant's possession was rightful.

9. *Ejectment; Defenses.*—Where defendant in ejectment was in possession under certain tenants in common, every defense available to them was equally available to the defendant.

10. *Same*—A tenant in common cannot maintain ejectment against a co-tenant in possession unless there has been an ouster of the plaintiff by the defendant before suit brought, or something equivalent thereto.

11. *Same.*—Where one tenant in common sues another in ejectment, the burden is on the plaintiff who asserts an ouster to overcome by proof the presumption of possession for the common benefit of all.

12. *Same; Ouster; Repudiation.*—A defendant's co-tenant's repudiation of the existence of the relation of tenant in common is sufficient evidence of previous ouster to excuse demand by plaintiff to be let into possession before suit brought.

13. *Same; Evidence.*—Formal demand by one co-tenant to be let into possession or enjoyment of his right as a co-tenant, and a refusal is clear evidence of ouster authorizing the bringing of ejectment.

APPEAL from Monroe Circuit Court.

Heard before Hon. JOHN T. LACKLAND.

Ejectment by Cammie Vera Farr, and others, against Lemuel Perkins and others. Judgment for defendants and plaintiffs appeal. Affirmed.

BARNETT & BUGG, and H. H. McCLELLAND, for appellant. At the time the deed was made, the husband could not convey the legal title directly to his wife (*Maxwell v. Gray*, 85 Ala. 577), and if the deed is to be held good as an executory devise (section 3398, Code 1907), then the wife acquired an equitable separate estate on which may be based the fee simple title of the youngest son, who it appears arrived at the age of maturity, but died without issue. The limitation over to the youngest son was void because not based on a sufficient freehold, and the property descended to the heirs as if there had been no devise.—3 S. & P. 28; 29 Ala. 76. All the limitations over on this equitable life estate were void, and hence, this property should descend according to the law of descent.—*Flynn v. Davis*, 18 Ala. 132; 29 Ala. 478; 34 Ala. 349; *Sherrod v. Sherrod*, 37 Ala. 537; *Phinizy v. Foster*, 90 Ala. 262; *Bibb v. Bibb*, 79 Ala. 437; *Newsom v. Holesaple*, 101 Ala. 682; *Smaw v. Young*, 109 Ala. 528. The presumption prevails that the possession of the tenant in common is the possession of all until some open notorious act of ouster and adverse possession is brought home to the notice or knowledge of the co-tenant out of possession.—*Fielder v. Childs* 73 Ala. 567; *Inglish v. Webb*, 117 Ala. 387; 98 Ala. 448; 2 Mayf. 78; 50 Am. St. Rep. 843. The court could have given the affirmative charge to the plaintiff on the theory that the heirs of Charlie Moore did not defend.

FITTS & LEIGH, for appellee. Being in possession as the agent of her children, it was the right of appellee to make any defense that her children could make.— *Franklin v. Dorlan*, 87 Am. Dec. 111. Each tenant holds for himself and his co-tenant, and each is entitled to possession of the entire tract in which he was interested.—*Long v. Grant*, 50 South. 914. It is necessary

to prove an ouster or its legal equivalent before one co-
tenant can maintain ejectment against another—*So. C.
O. Co. v. Henshaw,* 89 Ala. 448; *Jones v. Perkins,* 1
Stew. 512. Under the deed, the entire legal estate had
passed to the children, the landlords of the tenant in
this case.—Sec. 3417, Code 1907; *Gunn v. Hardy,* 107
Ala. 609; *Andrews v. Huckabee,* 30 Ala. 143. The reser-
vation of the life estate did not in itself make the deed a
will.—*Trawick v. Davis,* 85 Ala. 342; *Abney v. Moore,*
106 Ala. 131; *Hopper v. Reeves,* 132 Ala. 625. The deed
must be interpreted as a whole.—*Hammer v. Smith,* 22
Ala. 433; *Sullivan v. McLaughlin,* 99 Ala. 60; *Overton
v. Mosely,* 135 Ala. 599. When so construed it vested a
fee in the defendants based on the original equitable
separate estate of his wife, and the limitations therein
are in no wise void.—*McWilliams v. Ramsey,* 23 Ala.
813; *Terrill v. Reeves,* 103 Ala. 264; *Mason v. Pate,* 34
Ala. 379; *Wilson v. Alston,* 122 Ala. 630; *Finlay v. Hill,*
133 Ala. 229; *Goldsby v. Golsby,* 38 Ala. 404.

SOMERVILLE, J.—L. R. Moore, the grandfather of
plaintiffs and defendants, executed a deed in the year
1870, conveying the land sued for to his wife, Sarah
Moore. The habendum clause of the deed was as fol-
lows: "To have and to hold unto said Sarah J. C.
Moore, during the term of her natural life, with
all the privileges and appurtenances thereto be-
longing, and at her death all the right, title and
property interest therein to vest and descend to
our youngest son, John Wheeler Moore, in fee simple.
And provided in the event of his death before he arrives
at the age of maturity and lawful marriage and before
child born, or to be born, the issue and fruits of said
marriage, then further, in consideration of love and af-
fection of my said sons, said lands and tenements are

to descend to and be inherited and enjoyed by my next youngest son, James Sylvester, to him and to his lawful heirs or children forever. But in case the said James Sylvester Moore, second youngest son of L. R. and Sarah J. C. Moore, should die without children lawfully begotten, then said lands and all interest therein to descend to my next youngest son and to his children, and so on to the next oldest son and their heirs forever, in case of the death or failure of issue lawfully begotten of the younger sons. But in the event of the death of all my sons without surviving children lawfully begotten, then I give the said lands, after the life estate of my said wife, to my daughter Catherine. It being the true intent and meaning hereof that my said wife, Sarah, shall have a life estate and interest in said lands first; then said lands to descend and be inherited and enjoyed by our youngest son then alive and his lawful children. But in case of his death without lawful children, the residue or remainder interest to descend and be enjoyed by my next youngest son then alive and his lawful children forever, and in the event of the death of all my sons during the life of my wife, Sarah, then I give my said lands to my said daughter then living and to her heirs forever."

The record shows that said L. R. Moore died in 1879; his wife, said Sarah Moore, died about 1885; John Wheeler Moore, the youngest son, died in 1906; James Sylvester Moore, the next youngest son, died in 1878; and Charles Moore, the next youngest (and oldest) son, died "prior to the death of John Wheeler Moore"; and Catherine Moore Farr, the daughter named in the deed, died before this suit was begun. John Wheeler Moore died at the age of 40 without bodily heirs, never having married; James Sylvester Moore died without bodily heirs; Charles Moore left surviving him a widow, Flor-

ence Moore (who was made a party defendant on motion), and "children," the number and ages of whom are not made to appear; and Catherine Moore Farr left surviving her six children, who are the plaintiffs in this action. The grantor's widow, Sarah Moore, held possession of the land from and after his death until her own death. And, when she died John Wheeler Moore took possession and held until his death in 1906. After this event, Charles Moore's widow, Florence Moore, took possession "for her children." She was the agent of her children (by Charles Moore), and "leased said lands to Lemuel Perkins as such agent." As shown by the record proper, this suit was brought against this Lemuel Perkins as sole defendant, but on defendant's suggestion that Florence Moore was his landlord, and on her motion to be made a party defendant, it was ordered by the court that she "is made a party defendant to this cause, and the landlord of said tenant." The only plea shown is the general issue filed by Florence Moore. On motion of defendants, the court excluded all of plaintiffs' evidence, and on request of the defendants the court gave the general affirmative charge for the defendants, and refused to instruct the jury to find for the plaintiffs for a one-sixth undivided interest in the land; both charges being requested in writing. There was verdict and judgment for the defendants, from which plaintiffs appeal and assign as error the giving and refusing of the two charges, respectively, above referred to.

The theory of plaintiffs' counsel is that the several remainder interests limited in the deed are void because (1) the estate of the life tenant—the grantors' widow—was under the law then in force but an equitable estate, and therefore incapable of supporting a remainder; or (2) the remainders to vest in James Sylvester Moore, or Charles Moore contingently upon the failure of issue in

John Wheeler Moore, necessarily failed because neither of those persons was in existence when the event happened upon which an estate could vest in him; and therefore, whether the estate became a fee simple in John Wheeler by the premature death of the two contingent remaindermen, or reverted to the grantor, or his heirs, it results that plaintiffs are the owners by descent of a one-sixth interest jointly with the other lineal heirs of their grandfather, the grantor. Although plaintiffs claim to own only a one-sixth interest, it is insisted that they were entitled to recover the whole property because the defendant Florence Moore is not shown to have any interest therein, nor any right to defend the suit in her own name. The theory of defendants' counsel, on the other hand, is that the grantor intended to make not only his several sons grantees in remainder, but their children as well, his chief intention as gathered from the whole deed being, it is argued, to keep the entire property in one of the male lines, if any there should be, to the exclusion of daughters and their children.

1. Under the principles of the common law, an estate in remainder could be supported only by a prior freehold estate. This was due, as Mr. Washburn says, to "that imperative feudal dogma of the common law, that a distinct independent freehold estate in lands cannot be created to commence in futuro."—2 Wash. on Real Property (5th Ed.) 582. And the basis of this dogma was that estates could be created only by livery of seisin, which operated strictly in præsenti.

Doubtless that ceremony as an incident of conveyances never prevailed in this country at all, being practically abolished by the English statute of uses (St. 27 Henry VIII), which was a part of our common law.— *Horton v. Sledge*, 29 Ala. 478. But it was formally abolished by the act of December 22, 1812 (Toulmin's Dig.

p. 247), and with it fell most if not all of its technical incidents. Accordingly it is the settled rule in this State that an estate in land may be created to take effect in possession upon the death of the grantor with reservation to the grantor of the intervening use and possession.—*Daniel v. Hill,* 52 Ala. 430, 436; *Hall v. Burkham,* 59 Ala. 349; *Sharp v. Hall,* 86 Ala. 110, 113, 5 South. 497, 11 Am. St. Rep. 28.

The deed now before us created in the wife of the grantor an equitable separate estate, the legal title during her life and his vesting in him as trustee for her. Hence, it would seem that in any view of the case there was a complete divesture of the grantor's estate and the creation of a prior particular freehold estate technically sufficient to support the remainder in John Wheeler Moore.

2. By the terms of the deed upon the falling in of the widow's life estate there was vested in the youngest son, John Wheeler Moore, an estate, "in fee simple;" but the qualifying clause that immediately follows makes of it in reality a base or terminable fee, since it may be defeated by the death of the taker before arriving at the age of maturity, and without lawful issue.

And the limitations over are not technically contingent remainders, but rather estates in fee upon conditional limitations.—2. Wash. on Real Prop. (5th Ed.) 590, 591; *Horton v. Sledge,* 29 Ala. 496. And under these authorities it is clear that the limitations over to the two other sons and the daughter, Catherine, were valid.

But, since it was possible, as actually happened, that none of these successive contingent grantees could or would be alive, and also meet and satisfy the condition upon which alone his estate would cease to be terminable and become one in fee simple, either there was left

in the grantor a quasi reversion, a possibility of ultimate interest not limited over by the deed, or else, by reason of the impossibility of the conditional limitations taking effect, a condition that arose during the lifetime of John Wheeler Moore by the death of his two brothers, one of whom left children (which defeated the limitation to Catherine), the terminable fee in John Wheeler became eo instanti a fee simple.

It not appearing that John Wheeler left a will, we presume that he died intestate, and in that event the location of the ultimate fee, whether in him or his father, is of no practical consequence, since the descent of the land would in either case be the same. We therefore deem it unnecessary to decide this question.

3. Under section 1579, Code 1867 (section 3417, Code 1907), "lands may be conveyed to the wife and children, or children only, severally, suuccessively, and jointly." The limitations of the present deed are clearly within the terms of the statute, and do not violate the law against perpetuities.

4. It is insisted for the appellees that the children of Charles Moore are entitled, under a proper interpretation of the deed, to the entire estate, just as they would have been had their father survived John Wheeler, and died intestate. Looking to the language of the whole deed, we are unable to approve such a conclusion. In designating the successive beneficiaries he had in mind, the grantor nowhere uses the alternative *"or* his chilren," or *"or* his lawful heirs." Indeed, he is explicit in the explanatory clause appended by him to restrict the descent in each case to the next youngest son *then alive;* and the varying phrases of reference to "heirs or lawful heirs," or "children," must be understood as words of limitation, intended only to convey the notion of a contingent fee to the son, and not as words of purchase to

[Farr, et al, v. Perkins, et al.]

the grandchildren. The use of the word "forever" several times in this connection adds force to this conclusion. It certainly cannot be that the grantor intended to graft contingent remainders to possible grandchildren onto the conditional limitations to his several sons, nor is the language consistent with the notion that he intended to make these possible grandchildren joint purchasers with their respective fathers. And upon no other theory can appellees' contention be sustained.

5. It is obvious that Florence Moore, the alleged landlord of Lemuel Perkins, was not his landlord at all; the real landlords being her children, for whom she merely acted as agent in the making of the lease. However, as the object of the statutes (Code, §§ 3840 and 3844) in making a landlord a party defendant is either to bind him by the judgment, or permit him as of right to efficiently defend the suit in propria persona, and as the judgment for possession in fact operates only on the tenant in possession, the intervention of a false landlord in this action could not give the plaintiffs a right to a separate judgment against her, if Perkins' possession was rightful; and still less could it entitle them to a judgment against both of them jointly. Hence the issue depended upon the rightfulness of Perkins' possession.

6. As we have seen, Lemuel Perkins occupied the land as the tenant of the children of Charles Moore, who, we hold, are tenants in common with the plaintiffs. Every defense available to them is equally available to him as their tenant.

It is a fixed principle of the law of tenancy in common that one tenant cannot maintain ejectment against a co-tenant in possession unless there has been an ouster of the plaintiff by the defendant, or something equivalent thereto, before suit brought.—*Jones v. Perkins,* 1 Stew. 512; *Foster v. Foster,* 2 Stew. 356; *Philpot v. Bingham,*

55 Ala. 435; *Southern Cotton Oil Co. v. Henshaw*, 89 Ala. 448, 7 South. 760.

In *Hamby v. Folsom*, 148 Ala. 224, 42 South. 549, it is said, per Tyson, J.: "It is undoubtedly the law that, if a person be a part owner, the presumption is that he enters as such part owner, intending, while enforcing his own rights, to respect those of his cotenants, and until by some act of an unequivocal character he indicates that his possession is no longer the possession of his cotenants, as well as himself, he cannot claim to have acquired any rights against them based upon their disseisin. The unequivocal act, however, may be shown by acts and circumstances, and its existence need not be established by direct evidence."

Whether there has been an ouster or not is generally a question of fact for the jury, and various circumstances may be proved from which the jury will be authorized to infer it.—*Hamby v. Folsom, supra;* 7 Ency. Pl. & Pr. 319.

The burden is upon him who asserts an ouster by his cotenant to overcome by proof the presumption of a possession friendly to and for the common benefit of all.—7 Ency. Pl. & Pr. 317, 318.

Where, however, the defense interposed or any part of it denies the plaintiff's title entirely, and repudiates the existence of a cotenancy, this is, of course, sufficient evidence of previous ouster, and no demand to be let into possession need be made by the plaintiff upon the defendant before suit brought.—*Southern Cotton Oil Co. v. Henshaw*, 89 Ala. 448, 7 South. 760.

As remarked in *Newell v. Woodruff*, 30 Conn. 498, it is "eminently proper and safe, before bringing an action of ejectment against a tenant in common, to test the intent with which the property is holden by a formal demand to be let into the enjoyment of the right claimed;

[Bush v. Fuller.]

and a refusal furnishes that clear evidence of ouster which a demand and refusal furnish of a conversion in trover." The defense here interposed by defendants does not in any way deny that plaintiffs have an interest in the land, but only denies the allegation of the complaint that defendants are unlawfully withholding the land; plaintiffs suing for the whole, and not merely their share.

Nor is there anything in the evidence which can at all support an inference that the possession of Florence Moore, as agent for her children, or of Lemuel Perkins as their tenant, ever became hostile to plaintiffs' rights, or exclusive of their claims, or ever resulted in an ouster or anything equivalent thereto. In such a state of the evidence, it is manifest that plaintiffs showed no right to maintain ejectment against the defendants, who held under lease from plaintiffs' cotenants, and for this reason the trial court properly gave the general affirmative charge for the defendants. The judgment is therefore affirmed.

Affimed.

SIMPSON, ANDERSON, and SAYRE, JJ., concur.