75 So.2d 138

## W. J. ROBINETTE

v.

## Vivian TIDWELL.

6 Div. 737.

Supreme Court of Alabama.

Oct. 7, 1954.

Johnson & Randall, Oneonta, for appellant.

Nash & NeSmith, Oneonta, for appellee.

## PER CURIAM.

This is an appeal by plaintiff in an equity suit which sought to cancel two deeds, purporting to be executed by plaintiff to defendant, on the ground that they were never delivered to her.

Defendant is the daughter of plaintiff and claims to have bought the land and seeks a reformation in one respect, and in the alternative a specific performance. The court rendered a final decree on the pleadings and proof and denied relief to plaintiff on the original bill and to defendant on her cross bill. Plaintiff appealed and assigned errors. Defendant neither appealed nor cross assigned errors.

The only question presented is one of fact; and that is whether the deeds in question were effectually delivered by plaintiff. The first deed was dated April 6, 1946, and the second was dated June 14, 1951. The first deed was delivered to defendant by her mother who was one of the grantors, but who did not have any title to the land. The delivery was made on or about August 5, 1946, and without the authority of plaintiff in whom rested the title to the land. Defendant then had the deed recorded. On June 14, 1951 plaintiff and his wife signed another deed to defendant, duly acknowledged it, and plaintiff himself had it recorded, but neither of the grantors ever put it into the hands of defendant. The second deed contains a recital that it is made to correct the description in a deed made by them "on the —— day of ——— 19—, and which deed is recorded in Vol. 96, on page 121 of Records in Probate Office". That was the deed of April 6, 1946. Both deeds contained the following recital: "This deed is not valid or effective in any way until after our death, at which time it immediately becomes valid and effective". The court was not called upon to construe the deed in that respect and did not undertake to do so.

■ It was not contended that plaintiff's wife had authority to deliver the deed to her daughter, the defendant, but that plaintiff ratified such delivery both by his conduct and by the execution and delivery for record of the later deed. Plaintiff contends that defendant is not in position to claim that the second deed was effectually delivered on account of the admission of defendant in the answer and cross bill. She alleges in the answer "that the deed (of June 14, 1951) was not delivered to your respondent", and that "your complainant did execute another deed to your respondent correcting the mistake in the description and had same recorded, but did not deliver the deed to your respondent". The brief for appellee contends that those allegations are intended to assert that the deed was not manually delivered to her. The allegation does not necessarily mean that the deed was not effectually delivered to the probate judge for her, but it could mean what appellee's brief suggests. We think that the incidents of the trial are such as to show that the allegations in the answer were intended to mean that the deed was never delivered to the defendant in person. We are willing to give it that construction. If by a delivery of the deed to the probate judge for record, there was an effectual delivery, legally speaking, the decree of the court was well supported. That deed would have had the effect of ratifying the delivery of the previous deed as to the land described in the later one. The chief difference between the two deeds was to omit a small part of the tract described in the first deed to enable plaintiff to make a sale of it.

Plaintiff testified in substance that he prepared both deeds after he talked with a lawyer and asked him how to prepare a deed so he could get the rent during his life and after his and his wife's death the land would belong to his daughter. The lawyer told him how to fix it and it was at his suggestion that plaintiff inserted the clause copied above. He testified that what he wanted to do was to convey the property to his daughter and her husband and reserve a life estate for himself. That he never talked with his daughter before he prepared the first deed. That he prepared it at his home located on the land and signed it before a notary public and put it away with other papers. That he told his daughter's husband, Grover Tidwell, to take charge of the place like it was his own and they would pay as rent either one-third and one-fourth, or a reasonable standing rent as long they live "unless we got to the place where we had to be taken care of, then the rent would be taken care of. And at our death the land would belong to him". He paid $100 as rent for 1946, and $100 for 1947, $50 for 1948, $50 for 1949, and corn worth $25 for 1950.

Defendant contended that those amounts were on the purchase price of $400 recited in the first deed as the consideration; that it was agreed that plaintiff would retain the dwelling house and garden on the place as long as he and his wife live, and sought to reform the deed to contain that recital.

Plaintiff testified that he had knowledge of the delivery of the first deed to his daughter before he executed the second and had it recorded. He did not seek to cancel those deeds until some months after the second deed was made to enable him to sell some of the land to his son who wanted to build on it. His wife told him she delivered the first deed to defendant the day before she went to the hospital on the 5th or 6th of August 1946. Plaintiff testified that on June 14, 1951 the deed was prepared at Mr. Loggins' and was written out by Mrs. Clyde Blackwood, who copied what he had prepared. It recites a consideration of "one dollar and other valued benefits". The land consisted of about ten or eleven acres and was shown to be worth between $1,200 and $2,000.

Plaintiff's wife testified that she was fixing to go to the hospital and told her daughter that she would let her have the deed to keep because the house might catch fire and burn up. Her husband had not authorized her to deliver it, and she did not tell him for several years. That she asked Uncle Bud Healey when she signed the deed "will this get us out of a home?" He said, "no, the place will still be yours like it always has been and you can rent it to anybody you please".

The principle is well understood that the mere undisclosed intention of the grantor not to deliver at the time he causes a deed to be filed for record with no surrounding facts or circumstances in support thereof, is insufficient to overcome the effect of the act of recordation as a prima facie showing of delivery of the deed. Retention of the deed by the grantor after it is recorded is not always sufficient to overcome such conclusion. That is to be taken in connection with what he said at the time; the relation between him and the grantee, and his purpose gathered from all the facts, circumstances and declarations made at the time, but not his undisclosed intention. Gulf Red Cedar Co. v. Crenshaw, 169 Ala. 606, 53 So. 812; Skipper v. Holloway, 191 Ala. 190, 67 So. 991; Deramus v. Deramus, 204 Ala. 144, 85 So. 397; Alford v. Henderson, 237 Ala. 27, 185 So. 368; Taylor v. O'Barr, 242 Ala. 302, 6 So. 2d 414; Low v. Low, 255 Ala. 536, 52 So. 2d 218.

The repeated declaration of the plaintiff, who was the grantor, that he wanted his daughter to have the land after his death and the death of his wife, and that her husband could pay rent until they (the grantors) got to a place where they had to be taken care of, and he couldn't care for himself, there would be no rent then to pay, indicates an intent to deliver the deed, but that the grantee's right under it should come into effect at the death of the grantors. Such expressions in a deed have been treated in our cases and held to create a remainder interest. Abney v. Moore, 106

Ala. 131, 18 So. 60; Farr v. Perkins, 173 Ala. 500, 55 So. 923; Phillips v. Phillips, 186 Ala. 545, 65 So. 49; Jenkins v. Woodward Iron Co., 194 Ala. 371, 69 So. 646; Arrington v. Brown, 235 Ala. 196, 178 So. 218.

■■ The evidence in this case was not that of witnesses who testified in the presence of the presiding judge. Equity Rule 56, Code 1940, Tit. 7 Appendix. So that it becomes our duty to determine the issues without giving any favorable presumption to the finding and conclusion of the trial court. Title 13, section 17, Code. This we have undertaken to do. And from the evidence we conclude that it was the intention of plaintiff as grantor in preparing, signing and acknowledging its due execution, with that of his wife and her separate acknowledgment, and the act of filing it for record, to make a delivery of the deed of June 14, 1951, which ratified the delivery of the deed of April 6, 1946, as amended by the later deed, notwithstanding the fact that he received the later deed from the probate judge after it was recorded and has held it since then and has never put it into the hands of the grantee. There is no ultimate purpose shown in making the record disclose a conveyance contrary to his purpose and intent, as in Powell v. Powell, 217 Ala. 287, 116 So. 139. Why did he want the record to show title in the grantee, if he did not so intend? No answer appears in the evidence.

We agree therefore with the trial court that the deeds in question do not constitute a cloud on plaintiff's title but are valid conveyances and that, therefore, relief was denied and the bill dismissed without error. The ruling and decree should be affirmed.

The foregoing opinion was prepared by Foster, Supernumerary Justice of this Court, while serving on it at the request of the Chief Justice under authority of Title 13, section 32, Code, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and SIMPSON, GOODWYN and CLAYTON, JJ., concur.