300 So.2d 344

Margaret BAILEY and Henrietta Lamb

v.

Elizabeth Jennett BRANNON, as Administratrix of the Estate of Mark Andrew Henderson, Deceased, and Ben F. Jennett.

SC 546.

Supreme Court of Alabama.

Sept. 12, 1974.

George S. Brown, Birmingham, for appellants.

Roberts & Davidson and Dan M. Gibson, Tuscaloosa, for appellees.

JONES, Justice.

This appeal comes to us from the Circuit Court of Tuscaloosa County to decide the following issue: Did the devise in question create an absolutely vested interest or was it a vested interest subject to an executory limitation and hence capable of being divested? We hold, in affirming the trial Court, that the latter was created.

Mark Andrew Henderson, a University of Alabama student, died intestate on July 20, 1969, at the age of nineteen. He was the only issue to be born from the marriage of Louise Jennett Henderson and Lawrence A. Henderson, though each did have children from their prior marriages resulting in Mark's having five half-brothers and sisters. Mrs. Henderson's children, the petitioners-appellees, are Mrs. Elizabeth Jennett Brannon, the wife of a Tuscaloosa dentist, and Ben F. Jennett, a career navy man. Mr. Henderson's children, the respondents-appellants, are Mrs. Margaret Bailey, Mrs. Henrietta Lamb, and Lawrence Henderson, Jr.

The sole testimony in the trial was that of Elizabeth Jennett Brannon. A condensed recital of her testimony follows:

My mother, father, brother and I lived together until my father died when I was thirteen—I am now forty-six. In 1946, mother married Lawrence A. Henderson. I did not live with them because I was in nurse's training; neither did my brother who was in the Navy and away at sea. Mr. Henderson had been previously married and divorced. Three children were born of this first marriage. They were grown at the time of the marriage of Mr. Henderson and mother and never lived with them. Mark was born of this marriage. Mr. Henderson died in 1959. Mother had extensive surgery in 1964, and my brother, Mark, and I helped mother move to Tuscaloosa in 1965. It was then that she bought the house that is the only property left by her at her death in 1968. After her surgery in 1964 and before she bought the Tuscaloosa property in 1965 she stayed at my home for six or eight weeks so that I could nurse and look after her. I also looked after Mark. He and I were very close. I have never met Mr. Henderson's first three children. They did not come to mother's funeral; I don't think they came to Mark's. About the only things mother might have inherited from Mr. Henderson was some of the furniture in the house.

When my father died, mother was left with a home and a small amount of money. She sold the house so that we could get an education. My brother, mother, Mark and I talked about mother's estate, and we all agreed that whatever she had ought to go to helping Mark get an education. My brother was in the service and I am married to a dentist here in Tuscaloosa. Not only am I administratrix of Mark's estate, but also I am executrix of mother's will, as well as being guardian and trustee for Mark while he was still living. Mark went to college and was working his way through. I did not give him any money as guardian and trustee; I did give him small sums of money when he wanted something special like clothes. No assets were sold and no money was drawn out. There were not any assets except the house and a small amount of cash money. I did not want to sell the house. I did not

know I had any right to sell it. Mark had normal debts which a young man might have. I paid for them out of the fund.

Mrs. Henderson died on November 15, 1968, leaving a will, the pertinent parts of which read:

"SECOND: I give and bequeath my silver to my daughter, Elizabeth Jennett Brannon, to be her property absolutely.

"THIRD: I give and bequeath my household furniture, furnishings and equipment to my daughter, Elizabeth Jennett Brannon, my son, Ben F. Jennett, and my son, Mark Andrew Henderson, share and share alike, to be their property absolutely.

"FOURTH: I give, bequeath and devise to my son, Mark Andrew Henderson, all of the rest and remainder of the property which I may own or have an interest in at the time of my death, including but not limited to all cash, proceeds of life insurance and any and all property of every kind and nature whatsoever *to be his property absolutely subject to the terms, provisions and restrictions of this my Last Will and Testament.*

"By this my Last Will and Testament, I hereby nominate and appoint my daughter, Elizabeth Jennett Brannon, and my son, Ben F. Jennett, as Testamentary Guardians of and Trustees for my son, Mark Andrew Henderson, and they shall serve as such Testamentary Guardians and Trustees without any bond for the performance of their duties as such Guardians and Trustees. They shall, however, make an inventory of the assets which they shall receive as said Testamentary Guardians and Trustees and furnish a copy of same to the said Mark Andrew Henderson and at least once a year they shall report to the said Mark Andrew Henderson the amount of said assets remaining at the time of such report. As said Guardians and Trustees I hereby give the said Elizabeth Jennett Brannon and Ben F. Jennett full authority to use the assets and proceeds of my estate which I have left to the said Mark Andrew Henderson in any such manner and in such amounts as they deem proper, adequate, necessary and advisable for the education and maintenance of the said Mark Andrew Henderson, the only restriction being that they use their best judgment in preserving his money so he will get a college education if possible.

"FIFTH: *In the event the said Mark Andrew Henderson predeceases me, or in the event he should die before he becomes twenty-one years of age, and there is any of the said property herein bequeathed and devised to the said Mark Andrew Henderson, remaining after his debts are paid, then, upon the happening of either or both of such events, I give, bequeath and devise such remainder of my said property to Elizabeth Jennett Brannon and Ben F. Jennett, share and share alike, to be their property absolutely.* However, this provision is not intended to and it shall not in any manner restrict or interfere with said Guardians and Trustees in the expenditure of any and/or all of my property in their discretion for the maintenance, support and education of the said Mark Andrew Henderson." [Emphasis supplied.]

The emphasized (italicized) portions of Items Fourth and Fifth present the grounds for this contest. The appellants contend that these provisions vested an absolute interest in the property for Mark at the time of his mother's death and hence would pass through his estate in intestate succession while the appellees contend that these provisions created a devise subject to an executory limitation (vested subject to being divested), in which case the property would pass to Elizabeth and Ben as remaindermen should the condition subsequent occur.

This Court, speaking through Mr. Justice McCall, stated in First National Bank v. Klein, 285 Ala. 505, 234 So.2d 42 (1970):

" . . . certain principles governing the construction of wills in this state are settled. They are:

"(1) The intention of the testator is always the polestar in the construction of wills, and the cardinal rule is to give it effect if not prohibited by law.

"(2) The intention of the testator may be ascertained not only by the writing itself, but from the light of attending facts and circumstances, and,

"(3) In arriving at that intention, the court should consider the instrument as a whole."

■ The evidence presented to the Court below clearly shows that the sole intent of Mrs. Henderson was to care and provide for her own natural children from both of her marriages and not the children of her second husband by his former marriage. This wish was manifested in two alternative provisions: the first being to take care of the education and welfare of her minor son (the other two children already having found their stations in life), and the second being that should the gift fail due to the death of Mark before the age of 21, his devise should be divested, with the remainder going to her other two natural children, Elizabeth and Ben. Stated otherwise, her sole concern was to provide for her children in the order of their needs, Mark's coming first to enable him to finish his education since her other two children were already established in life. Thus, when all of the attending facts and circumstances are analyzed, her intent was clearly to include only her natural children and not the appellants as potential beneficiaries under her will.

■ Appellants offer no argument in brief that the testatrix did not favor her three natural children. Rather, appellants' first argument is that Mark had a vested interest in the residue the moment he survived his mother due to the two conditions set forth in Item 5: "In the event . . . Mark . . . predeceases me, or in the event he should die before he becomes twenty-one years of age . . ." Both of these "events" should be construed as conditions occurring during the lifetime of the testatrix, reasons the appellants, on the theory that the law favors early vesting. See Brizendine v. American Trust & Savings Bank, 211 Ala. 694, 101 So. 618 (1924); Haigler v. Haigler, 202 Ala. 480, 80 So. 864 (1919).

Appellees properly refute this argument by pointing to the language setting up the two conditions imposed upon the devise to Mark. Item 5 provides that in the event Mark predeceased his mother or in the event he died before reaching 21, then or the happening of either or both of the events, the property is to go over. To rule that both conditions relate to the testatrix's lifetime will make the second condition merely redundant. The first condition clearly is measured during testatrix's lifetime. The second condition must be measured from the standpoint of what age Mark died—whether during or after testatrix's lifetime.

■ Proper interpretation of the devise to Mark is that it is an executory devise. Mark received a defeasible fee simple in the residuary estate. Alabama has long recognized executory devises. McRee's Adm'rs v. Means, 34 Ala. 349 (1859). Different terms have been used to describe the precise interest which resides in the first taker: determinable fee, Farr v. Perkins, 173 Ala. 500, 55 So. 923 (1911); base fee, Montgomery v. Montgomery, 236 Ala. 161, 181 So. 92 (1938); qualified fee, Farr v. Perkins, supra; conditional fee, Newsom v. Holesapple, 101 Ala. 682, 15 So. 644 (1894). This type of estate is designated as an "estate in fee simple defeasible" in the Restatement, Property, § 16. Such

designation has been deemed the correct view of such an estate by several commentators. See 2 Tiffany, Real Property (3rd Ed.), § 364 at 117–18, and 4 Thompson on Real Property (1961 Replacement), § 1873 at 543.

Appellants next contend that, if the gift to Mark contains an executory devise, then the executory devise over to the two named devisees is void for repugnancy because of the first taker's absolute power of disposition over the residuary estate.

■ Early Alabama common law recognized the rule that an absolute power of disposition in the first taker would void an executory devise. McRee's Adm'rs v. Means, supra. Although various commentators have criticized this rule on the ground that it was founded on an erroneous presumption (see 2 Tiffany, Real Property (3rd Ed.), § 377 at 133–137), there is no need to further discuss this question since Alabama has modified the common law rule by statute. Tit. 47, §§ 76–79, Code of Alabama 1940 (Recomp. 1958). These Code provisions set up a statutory scheme which basically provides that where particular estates for life or for years (§ 76), or undefined estates (§ 77) are created in a will with an absolute power of disposition (as defined in § 79), and with no trust created, the first estate is not enlarged into an absolute estate except as to the property already disposed of by exercise of the power.

■ While we have found no Alabama cases treating the question whether §§ 76–79 change the common law rule with respect to defeasible estates, a recent Federal Court case has treated this issue. Judge Seybourn Lynne, former Chief Judge, Northern District of Alabama, held that §§ 76–79 extend to include defeasible fees:

"And since the purpose of Sections 76 through 79 . . . is to protect limitations over of undisposed portions of inferior estates subject to a power of disposition, it is only logical that *its application should extend to defeasible estates in fee* as well as to life estates." [Emphasis supplied.] Robertson v. United States, 199 F.Supp. 78, 83 (N.D. Ala., 1961).

We agree with this holding.

■ Thus, if Items 4 and 5 are given effect without the trust agreement taking effect, §§ 76–79 of Tit. 47 govern. Any part of the residuary estate not disposed of by Mark is subject to the executory devise to the other named devisees.

■ Assuming that the trust provision within Items 4 and 5 is given effect, Mark had no power to dispose of the residuary devise; such power rested in the trustees. Tit. 47, § 145, Code of Alabama 1940 (Recomp.1958), requires that legal title must vest in the trustees, with power and duty to manage the trust property. The trust provision expressly provides that the two named trustees had various powers. One of these powers was the power to expend any or all of the property in their discretion for the maintenance, support and education of Mark. This power is in keeping with the overall plan of the testatrix that Mark's education was of paramount concern.

■ Such power to expend any or all of the property for Mark's education is not to be understood as an absolute power of disposition so as to void the executory devise.

Tit. 47, § 79, defines absolute power of disposition as follows:

"§ 79 . . . *Absolute power of disposition defined.*—Every power of disposition is deemed absolute, by means of which the donee of such power is enabled in his lifetime to dispose of the entire fee for his own benefit; and where a general and beneficial power to devise the inheritance is given to a tenant for years or for life, it is absolute within the meaning of the last two sections."

This Court has held that § 79 ". . . is substantially, if not literally, the definition of an absolute power of disposition given by Chancellor Kent. 4 Kent, Comm. 320." Wells v. American Mortgage Company of Scotland, 109 Ala. 430, 443, 20 So. 136, 141 (1895); i.e., § 79 is but a codification of the English common law.

The power granted the trustees fails to qualify as an absolute power. The trustees were not granted the power to sell the residuary property for their own benefit. Neither were they granted the power to dispose of the residuary property at their pleasure. Rather, the trustees were granted a qualified power which was to be exercised only for the purposes of supporting, maintaining, and especially, educating Mark. Such qualified powers do not vest in trustees an absolute power of disposition. See Morgan County Nat. Bank of Decatur v. Nelson, 244 Ala. 374, 13 So.2d 765 (1943); Winn v. Winn, 242 Ala. 324, 6 So.2d 401 (1942); Nabors v. Woolsey, 174 Ala. 289, 56 So. 533 (1911).

In conclusion we are constrained to comment that, although we have elected to treat the issues as argued and presented by the parties, we are at a loss to understand the efficacy of this appeal in light of Tit. 16, § 5, Code of Alabama 1940 (Recomp. 1958), which reads:

"§ 5 . . . *No distinction made against heirs of half-blood; exceptions.* —There is no distinction made between the whole and the half-blood in the same degree, unless the inheritance came to the intestate by descent, devise, or gift from or of some one of his ancestors; in which case all those who are not of the blood of such ancestor are excluded from the inheritance as against those of the same degree."

Assuming the correctness of appellants' contention with respect to the issue of "vested" versus "vested subject to being divested" issue, the paternal half-brother and half-sisters of Mark are not of the blood of the testatrix, his mother, through whom the inheritance came to Mark by devise; and in the words of the statute they "are excluded from the inheritance as against those of the same degree", i.e., the maternal half-brother and half-sister. Otherwise stated, it would appear that the appellants could not ultimately prevail in their effort to share Mark's estate whether or not his mother's will vested the subject property absolutely in Mark at the time of his mother's death.

The ruling by the trial Court that the surviving children of the testatrix should take the residue is eminently correct. Therefore, this case is affirmed.

Affirmed.

HEFLIN, C. J., and COLEMAN, BLOODWORTH and McCALL, JJ., concur.